41 Cal.3d 700 (1986)
715 P.2d 699
224 Cal. Rptr. 738
FLOYD FRANKLIN, Petitioner,
v.
THE STATE BAR OF CALIFORNIA, Respondent.
Docket No. L.A. 32094.
Supreme Court of California.
April 7, 1986.
*703 COUNSEL
Edgar L. Borne III for Petitioner.
Herbert M. Rosenthal and Truitt A. Richey, Jr., for Respondent.
OPINION
THE COURT.
This is a proceeding to review the findings and recommendations of the State Bar concerning petitioner, Floyd Franklin.
The hearing panel recommended that petitioner be suspended from the practice of law for five years, that execution of the suspension be stayed, and that he be placed on probation for five years. As a condition of probation, the hearing panel recommended that petitioner be required to notify his clients that he is on probation. The review department, by a vote of eight to three, recommended that petitioner be suspended for only one year, that execution of the suspension be stayed, and that petitioner be placed on probation for one year.
This court notified petitioner that it was considering imposing more severe discipline than that recommended by the State Bar. Specifically, petitioner was informed that three months of actual suspension and nine months of stayed suspension might be imposed. Petitioner argues that no period of actual suspension is required to protect the public.

I.
Both the hearing panel and the review department found petitioner guilty of misconduct in his handling of two cases. The review department agreed with the hearing panel's findings of fact. Petitioner does not contest those findings.
*704 Petitioner has been a member of the State Bar since January of 1972. In 1977, Mr. and Mrs. Evans retained petitioner to represent them in a personal injury action. Petitioner filed a complaint on their behalf and later attempted to obtain a default judgment. This attempt was unsuccessful because petitioner's default papers were deficient and failed to establish adequate proof of service.
During 1980 and early 1981, Mr. Evans repeatedly tried to contact petitioner. Mr. Evans visited petitioner's office, called him on the phone, left him notes, and sent him letters. Petitioner refused to talk with Mr. Evans or respond to his messages.
In late 1980 and again in early 1981, Mr. Evans wrote petitioner, asking him for a progress report. Petitioner did not respond to these letters. Mr. Evans then retained another attorney who succeeded in settling the case.
In 1978, Mr. Edmonson retained petitioner to represent her in an action for personal injury and property damages against Volkswagen-Santa Monica and Volkswagen of America. Petitioner filed the action in April of 1979 and successfully opposed Volkswagen-Santa Monica's demurrer and motion to strike. Volkswagen-Santa Monica ultimately answered the complaint and cross-complained against Volkswagen of America. Volkswagen-Santa Monica also propounded interrogatories, which petitioner answered.
In late 1980, petitioner received interrogatories and a request for production of documents from Volkswagen of America. Petitioner failed to: (1) communicate with his client concerning these matters; (2) answer the interrogatories; or (3) produce the documents or challenge the request for production.
Volkswagen of America filed a motion to compel answers to the interrogatories and requested sanctions. Petitioner failed to oppose the motion or appear at the hearing on the motion. The trial court ordered petitioner to answer the interrogatories within 30 days.
Volkswagen-Santa Monica then noticed the taking of Ms. Edmonson's deposition. Petitioner failed to: (1) inform Ms. Edmonson of the scheduled deposition; or (2) appear at the deposition, or communicate with Volkswagen-Santa Monica regarding the deposition.
Volkswagen-Santa Monica and Volkswagen of America moved to strike Ms. Edmonson's complaint for failure to answer interrogatories and failure to appear at the deposition. Although petitioner failed to inform Ms. Edmonson of these motions, he appeared at the hearing. The trial court found *705 that Volkswagen-Santa Monica and Volkswagen of America were prejudiced by petitioner's failure to answer the interrogatories and produce Ms. Edmonson at the deposition. Accordingly, the trial court dismissed Ms. Edmonson's action.
Although petitioner at all times had Ms. Edmonson's correct mailing address and telephone number, he failed to advise her that her case had been dismissed.
In 1981, Ms. Edmonson retained another attorney to check with petitioner on the status of her case. The new attorney tried to contact petitioner several times by phone and wrote him three letters. When the new attorney received no response, he asked an associate to contact petitioner. The associate reached petitioner by telephone. Petitioner said he would return the call, but never did.
During the next five or six months, the associate telephoned petitioner ten to fifteen times. He succeeded in speaking with petitioner only once. On that occasion, petitioner indicated that he would release the case file to counsel the next day. However, he failed to do so.
Ms. Edmonson then sent a letter to petitioner discharging him. Petitioner did not respond. The associate sent petitioner a letter advising him of the discharge and requesting the file. Again, petitioner did not respond. Petitioner never informed Ms. Edmonson or her new attorney that the case had been dismissed.
In light of petitioner's conduct in the Edmonson and Evans matters, this court finds that petitioner wilfully violated his oath as an attorney (Bus. & Prof. Code, §§ 6067, 6103), failed to act competently (Rules Prof. Conduct, rule 6-101), and improperly withdrew from employment (Rules Prof. Conduct, rule 2-111).

II.
The hearing panel found petitioner guilty of a third act of misconduct. It held that petitioner "falsely, fraudulently and knowingly misrepresented to the hearing panel the status of the Edmonson case."
The review department disagreed. It did not find petitioner guilty of this third act of misconduct,[1] apparently because it concluded that petitioner did *706 not "deliberately deceive[]" the hearing panel. However, the review department found that petitioner testified "in a manner which would lead the hearing panel and State Bar to believe that the action filed on behalf of Ms. Edmonson was still active." The review department considered this conduct as a factor in aggravation.
Petitioner disagrees with the findings of both the review department and the hearing panel on this issue. Petitioner argues that he answered all questions honestly. He contends that he was never explicitly asked about the status of the Edmonson case.
In light of the disagreements among petitioner, the hearing panel, and the review department, this court must carefully review petitioner's testimony. The facts considered by the hearing panel and the review department concerning petitioner's failure to disclose material information are as follows.
The State Bar's notice to show cause charged petitioner with having failed to file an action on Ms. Edmonson's behalf. In his answer to the notice to show cause, petitioner admitted this charge. On the day of the State Bar hearing, petitioner amended his answer and stated that he had filed the action. Thus, it was not until the day of the hearing that the State Bar found out an action had in fact been filed.
At the hearing, petitioner was asked during direct examination whether Ms. Edmonson had requested the file in her case:
"Q. Did she ever ask for her file back?
"A. No.
"Q. Do you still have her file?
"A. Yes.
"Q. Are you willing to still work on the case?
"A. Yes.
"Q. Did you ever file an at-issue memorandum in that case?
"A. Yes.
"Q. Has a court date been assigned?
*707 "A. No."
Thus, although petitioner knew that the action had been dismissed,[2] he indicated that he was still willing to work on the case. He thereby implied that the action was still pending. When asked whether a court date had been assigned, petitioner simply answered "no." He failed to explain that a date would never be assigned because the case had been dismissed. Again, petitioner implied that the case was still active.
On cross-examination petitioner was asked to explain further what had transpired in the Edmonson action:
"Q. So we have [the complaint] served then in July of '79. What occurred next?
"A. After we filed the suit, after it was served?
"Q. Yes.
"A. Well, after it was served, we gave the other side an opportunity to answer, then extended their time. We were served with Interrogatories. We did some negotiating with the attorneys for both parties, that is[,] the main plant and the dealership.
"Q. Did you tell Ms. Edmonson you had received any Interrogatories?
"A. Yes. In fact, she answered Interrogatories.
"Q. Do you have copies of her answers?
"A. No."
Petitioner never revealed that additional interrogatories were propounded, that he failed to inform Ms. Edmonson of this fact, and that he failed to answer those interrogatories. Petitioner did not tell the panel that this failure, together with his failure to produce Ms. Edmonson at a scheduled deposition, resulted in dismissal of the complaint.
After petitioner testified about the progress of the Edmonson action, the State Bar subpoenaed the superior court file on the case and learned that the action had been dismissed. The State Bar then called petitioner to testify in *708 front of the hearing panel a second time to investigate the misleading nature of his previous testimony. Petitioner testified that he had not understood at the first hearing that he was being asked "the current status" of the Edmonson case.
(1) This court is not, of course, bound by the findings of facts of the hearing panel or the review department. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 511, p. 553.) "This court must independently examine the record, reweigh the evidence, and pass on its sufficiency in State Bar disciplinary matters." (Prantil v. State Bar (1979) 23 Cal.3d 243, 246 [152 Cal. Rptr. 351, 589 P.2d 859]; Wells v. State Bar (1978) 20 Cal.3d 708, 713 [144 Cal. Rptr. 133, 575 P.2d 285].) However, where credibility of witnesses is concerned, the findings of the hearing panel, which actually saw and heard the witness, are entitled to great weight. (Prantil v. State Bar, supra, 23 Cal.3d 243, 246; Skelly v. State Bar (1973) 9 Cal.3d 502, 509 [108 Cal. Rptr. 6, 509 P.2d 950]; and 1 Witkin, op. cit. supra, § 512, p. 555.)
(2a) The hearing panel, which actually saw and heard petitioner testify, found that petitioner's testimony was intentionally misleading.[3] This court gives great weight to that finding.
Although petitioner did not directly testify that the Edmonson case was still active,[4] his failure to reveal that it had been dismissed constituted a material omission. Petitioner was clearly being asked the current status of the Edmonson case when he was asked whether a court date had been assigned and whether he was willing to work on the case. This court finds that petitioner's answers to those questions were designed to mislead the State Bar.
(3) A disciplinary hearing before the State Bar is an adversary proceeding in which the State Bar has the burden of proving misconduct. (See Skelly v. State Bar, supra, 9 Cal.3d 502, 508; Black v. State Bar (1962) 57 Cal.2d 219, 222 [18 Cal. Rptr. 518, 368 P.2d 118].) (4) An attorney has no obligation to produce incriminating evidence on his own initiative. However, *709 he has an obligation to respond to the State Bar's inquiries in a manner which is "consistent with [the] truth" (see Bus. & Prof. Code, § 6068, subd. (d)).
An attorney has a duty "never to seek to mislead ... any judicial officer by an artifice or false statement." (Ibid.) This duty applies in State Bar disciplinary proceedings as well as court proceedings. (Barreiro v. State Bar (1970) 2 Cal.3d 912, 926 [88 Cal. Rptr. 192, 471 P.2d 992].) An attorney need not utter an affirmative falsehood in order to violate that duty. This court has held that concealment of a material fact "misleads the judge as effectively as a false statement.... No distinction can therefore be drawn among concealment, half-truth, and false statement of fact." (Grove v. State Bar (1965) 63 Cal.2d 312, 315 [46 Cal. Rptr. 513, 405 P.2d 553], citing Green v. State Bar (1931) 213 Cal. 403, 405 [2 P.2d 340].)
(2b) When petitioner stated that he was still willing to work on the Edmonson case, knowing it had been dismissed, he intentionally misled the hearing panel into believing that the Edmonson case was still active. Moreover, when petitioner simply answered "no" in response to the question whether a court date had been assigned, he again intentionally misled the panel. Petitioner's material omissions were designed to create, and did create, an impression that would mislead the State Bar. His testimony had the desired effect. It was not until the State Bar subpoenaed petitioner's file on the Edmonson case that it learned that the action had been dismissed due to petitioner's lack of diligence.

III.
In light of petitioner's misconduct, this court must determine the appropriate discipline. The hearing panel recommended five years of stayed suspension and probation, and the review department recommended one year of the same. Petitioner argues that the lesser discipline recommended by the review department is sufficient to protect the public.
(5) "`Although the State Bar's recommendation as to discipline is entitled to great weight ... we exercise our independent judgment in determining the appropriate punishment for professional misconduct....'" (Chefsky v. State Bar (1984) 36 Cal.3d 116, 132 [202 Cal. Rptr. 349, 680 P.2d 82], quoting Gordon v. State Bar (1982) 31 Cal.3d 748, 757 [183 Cal. Rptr. 861, 647 P.2d 137].) "`Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.'" *710 (Chefsky, supra, 36 Cal.3d 116, 132, quoting Jackson v. State Bar (1979) 23 Cal.3d 509, 514 [153 Cal. Rptr. 24, 591 P.2d 47].)
Where appropriate, this court has imposed more severe discipline than that recommended by either the review department or the hearing panel. (See Chasteen v. State Bar (1985) 40 Cal.3d 586 [220 Cal. Rptr. 842, 709 P.2d 861]; Gordon v. State Bar, supra, 31 Cal.3d 748; Olguin v. State Bar (1980) 28 Cal.3d 195 [167 Cal. Rptr. 876 616 P.2d 858]; Cain v. State Bar (1979) 25 Cal.3d 956 [160 Cal. Rptr. 362, 603 P.2d 464]; Martin v. State Bar (1978) 20 Cal.3d 717 [144 Cal. Rptr. 214, 575 P.2d 757].) In this case, more severe discipline is warranted.
(6a) In determining discipline, the particular facts of each case must be reviewed. (Olguin v. State Bar, supra, 28 Cal.3d 195, 200; Kelson v. State Bar (1976) 17 Cal.3d 1, 6 [130 Cal. Rptr. 29, 549 P.2d 861].) "There are no fixed standards as to the appropriate penalty." (Alberton v. State Bar (1984) 37 Cal.3d 1, 14 [206 Cal. Rptr. 373, 686 P.2d 1177]; Ritter v. State Bar (1985) 40 Cal.3d 595, 604 [221 Cal. Rptr. 134, 709 P.2d 1303].) Here, petitioner did not perform the services for which he had been retained. He failed to communicate with his clients about their cases and repeatedly refused to respond to clients' inquiries. In addition, petitioner failed to cooperate with Ms. Edmonson's new attorney.
This behavior constitutes serious misconduct. (7) "Serious misconduct exists if an attorney (1) wilfully fails to perform the legal services for which the attorney is retained and paid [citations]; [or] (2) wilfully fails to communicate with the client [citation]...." (Martin v. State Bar, supra, 20 Cal.3d 717, 722.)
(6b) Petitioner's misconduct started in 1977 and continued through 1983. His acts did not involve minor, technical deviations from the Rules of Professional Conduct. They constituted basic violations of petitioner's oath and duties as an attorney. Petitioner was not diligent in representing clients, and his conduct in the Edmonson matter seriously prejudiced his client's rights.
(8) Petitioner's lack of a prior record of discipline is a factor in mitigation. However, this court considers petitioner's intentionally misleading testimony before the State Bar a serious factor in aggravation. (See Doyle v. State Bar (1982) 32 Cal.3d 12, 23 [184 Cal. Rptr. 720, 648 P.2d 942]; see also In re Bogart (1973) 9 Cal.3d 743, 749 [108 Cal. Rptr. 815, 511 P.2d 1167]; Honoroff v. State Bar (1958) 50 Cal.2d 202, 210 [323 P.2d 1003].) A 45-day period of actual suspension takes into account the seriousness of petitioner's misconduct and the mitigating and aggravating factors. *711 Protection of the public and preservation of confidence in the legal profession render imposition of less than 45 days of actual suspension inappropriate.
Accordingly, this court orders that (1) petitioner be suspended from the practice of law for one year; (2) execution of the suspension be stayed; and (3) petitioner be placed on probation for one year. Probation shall include the following conditions: (1) that petitioner be suspended from the practice of law for 45 days, such suspension to begin on the date this order becomes final, and (2) that petitioner comply with the conditions of probation recommended by the review department. It is further ordered that petitioner shall take and pass the Professional Responsibility Examination within one year from the effective date of this order.
LUCAS, J.
I respectfully dissent. In my view, more severe discipline is warranted here.
Petitioner was admitted to the bar in 1972; his misconduct, spanning the period from 1977-1983, includes: (1) failure to communicate with the Evanses after repeated inquiries by them; (2) failure to answer interrogatories, produce documents, or inform one client of her scheduled deposition, or even apprise this client of these omissions, which eventually led to dismissal of her case; (3) failure to advise the client of the dismissal of her case; and (4) failure to cooperate with newly appointed counsel. Additionally, petitioner intentionally misled the State Bar hearing panel inquiring into these acts of misconduct.
The majority concludes that petitioner's misconduct "did not involve minor, technical deviations from the Rules of Professional Conduct. They constituted basic violations of petitioner's oath and duties as an attorney" (ante, p. 710), yet the majority imposes a mere one-year stayed suspension, and a one-year probation, with only 45 days' actual suspension from the practice of law. I disagree that a mere six-week suspension for conduct constituting "basic violations of petitioner's oath and duty as an attorney" is sufficient discipline to protect the public, preserve confidence in the legal profession, and maintain the highest possible professional standards for attorneys, our principal concerns in these matters. (Chefsky v. State Bar (1984) 36 Cal.3d 116, 132 [202 Cal. Rptr. 349, 680 P.2d 82].)
It is the essence of an attorney's duty and obligation to apprise the client of all developments in his or her case. An attorney does not function independently from the interest of his clients, but is the vehicle by which they assert their legal cause. Failure to communicate with a client, and failure to perform the services for which the attorney has been retained, are breaches *712 of these fundamental principles, and constitute serious misconduct. (Martin v. State Bar (1978) 20 Cal.3d 717, 722 [144 Cal. Rptr. 214, 575 P.2d 757].) Habitual disregard of the client's interests, combined with failure to communicate with the client, constitute acts of moral turpitude, justifying disbarment. (McMorris v. State Bar (1983) 35 Cal.3d 77, 85 [196 Cal. Rptr. 841, 672 P.2d 431], cert. den. 466 U.S. 958 [80 L.Ed.2d 553, 104 S.Ct. 2170].)
Moreover, an attorney's behavior at the time of his offense and subsequent investigation also influences our decision in setting appropriate discipline. (Bradpiece v. State Bar (1974) 10 Cal.3d 742, 749 [111 Cal. Rptr. 905, 518 P.2d 337].) It is a serious breach of an attorney's oath to mislead any judge or judicial officer; this duty extends to proceedings before the State Bar. (Olguin v. State Bar (1980) 28 Cal.3d 195, 200 [167 Cal. Rptr. 876, 616 P.2d 858].) In prior cases, we have observed that deception of the State Bar may constitute an even more serious offense than the conduct being investigated. (Worth v. State Bar (1978) 22 Cal.3d 707, 711 [150 Cal. Rptr. 273, 586 P.2d 588] [misappropriation of client funds while on probationary status and misrepresentations to the State Bar justified disbarment]; Cain v. State Bar (1979) 25 Cal.3d 956, 961 [160 Cal. Rptr. 362, 603 P.2d 464] [misappropriation and deception of the State Bar justified disbarment].) I submit that petitioner's intentional misleading of the State Bar is itself misconduct of a serious nature, calling into question his fitness to practice law.
The only evidence offered in mitigation is petitioner's absence of a prior disciplinary record. While properly considered a mitigating factor (Chefsky, supra, 36 Cal.3d at p. 132 [20 years of practice without disciplinary action]), the absence of a prior disciplinary record is entitled to little weight where the attorney has been in practice only a short period of time (Finch v. State Bar (1981) 28 Cal.3d 659, 666, fn. 3 [170 Cal. Rptr. 629, 621 P.2d 253] [less than three years' practice]; cf., In re Jones (1971) 5 Cal.3d 390, 400-401 [96 Cal. Rptr. 448, 487 P.2d 1016] [66-year-old practitioner with no prior disciplinary record]; Jackson v. State Bar (1979) 23 Cal.3d 509, 514 [153 Cal. Rptr. 24, 591 P.2d 47] [no disciplinary record in 37 years of practice]). Petitioner's six-year span of misconduct following only five years of practice is not a very persuasive circumstance.
Petitioner's dereliction of duty to his clients and subsequent intentional misleading of the State Bar hearing panel constitute precisely the type of callous conduct which engenders in the public a distrust of the legal profession. This conduct must not be tolerated; in the circumstances of this case, a substantially longer period of actual suspension is appropriate to protect the interests at issue. (See Martin v. State Bar, supra, 20 Cal.3d at pp. 723-724 [one-year actual suspension]; Olguin v. State Bar, supra, 28 Cal.3d at *713 p. 201 [six months' actual suspension]; Lester v. State Bar (1976) 17 Cal.3d 547, 552 [131 Cal. Rptr. 225, 551 P.2d 841] [same].)
NOTES
[1] This difference in the findings of the review department and the hearing panel may account for the less severe discipline recommended by the review department.
[2] Petitioner was present at the court hearing in which the trial court dismissed the Edmonson action. (See ante, p. 704.)
[3] The hearing panel found, inter alia, that petitioner "deliberately and willfully made material ... nondisclosures to this hearing panel of the true facts about the status of the Edmonson case."
[4] The hearing panel found that petitioner "testified ... that the [Edmonson] case ... was still active ... [¶] ... [and that petitioner's] testimony before the State Bar's hearing panel was false and known by [petitioner] to be false." Thus, it appears that the hearing panel found that petitioner actually lied during his testimony before the panel. This court does not adopt that finding.