[L.A. No. 32157. Nov. 24, 1986.]

In re RICHARD I. CHIRA on Suspension.

**COUNSEL**

Mark E. Overland and Overland, Berke, Wesley, Gits, Randolph & Levanas
for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Arthur Margolis for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review the recommendation of the State Bar Court that petitioner Richard Chira be suspended from the practice of law for one year, that the order of suspension be stayed, and that he be placed on probation for three years on specified conditions including thirty days' actual suspension.

Petitioner, who has been a lawyer for 24 years, was admitted to practice in California in 1975. On August 10, 1981, he was convicted of conspiracy to impede the lawful function of the Internal Revenue Service (IRS) in violation of 18 United States Code section 371. He was sentenced to one year probation. The conviction was affirmed by the United States Court of Appeals, Ninth Circuit, in November 1982. (*United States* v. *Everett* (9th Cir. 1982) 692 F.2d 596.) We referred the matter to the State Bar for a hearing and report on whether the facts and circumstances surrounding the commission of the offense involved moral turpitude or other misconduct warranting discipline, and if so, for a recommendation as to discipline.

The hearing panel held hearings on four separate days. Petitioner presented a number of witnesses who attested to his honesty and integrity. Some, however, did not know about petitioner's conviction. Petitioner testified solely on the issue of mitigation. On the advice of counsel he refused to testify about the facts and circumstances of his conviction because of the pendency of a motion for a new trial.

The hearing panel adopted the factual statement from the opinion of the Ninth Circuit affirming petitioner's conviction: "The government's evidence at trial consisted primarily of the testimony of an undercover IRS agent who answered an advertisement in a newspaper offering tax shelter investments and was referred to appellant Everett's firm, Intervest Associates, Inc. The agent posed as the representative of a wealthy resident alien who wanted to shelter 1980 and 1981 income. The agent met with Everett, appellant Chira and two others from Intervest to discuss general tax strategies. After this initial meeting, the agent met or spoke with Everett eight times and with Chira three times to plan a tax strategy to shelter income for both 1980 and 1981.

"In March 1981, the agent asked Everett about sheltering between $150,000 and $180,000 that his fictitious client had received in taxable

income for 1980. Everett told the agent that he could create a tax shelter for 1980, even at such a late date, by backdating the necessary documentation.

"After further discussions, Everett and the agent agreed on a plan to generate an $83,000 1980 tax write-off for the agent's client by combining a sale/leaseback of a Rolls Royce owned by appellant Chira and a computer sales/leaseback transaction.

"On April 16, 1981, the agent met both Chira and Everett at the Intervest offices to complete the computer and Rolls Royce transactions. Appellant Chira signed a conditional sales contract for the Rolls which was backdated to December 22, 1980. The agent received a number of documents relating to both transactions signed by Everett, Chira, and Roberta Mackey backdated to December 22, 1980. All documents signed by Everett and Chira were signed in the agent's presence on April 16, 1981, and dated December 22, 1980. After the signing of the documents, the agent gave appellants $45,000 as down payment and lease payments on the automobile and the computer. Finally, the agent, Chira and Everett went to the parking garage to inspect the Rolls Royce, at which time Chira and Everett were arrested."

An Intervest employee, Roberta Mackey, acted as trustee in these transactions. She purchased the computer equipment and the Rolls Royce in trust for the agent's client and signed a trust and fiduciary agreement which was used to create the impression that both the computer and automobile tax shelters were complete in 1980. Although petitioner prepared the trust agreement, all other documents were prepared by Intervest.

Petitioner has never admitted guilt, and has always claimed that he was duped. He perceives the whole episode as having been caused by his naivety and has been greatly embarrassed by it. He suffered such anguish that he was unable to practice law for about three years after his conviction. Petitioner underwent about 100 hours of therapy and states that he would obtain further therapy if the need were to arise.

The hearing panel found that petitioner's experience and training as a lawyer should have enabled him to analyze the proposed backdating and to have refrained from participating in the plan. It found, however, that circumstances did not involve moral turpitude, but that they did warrant discipline. The hearing panel recommended a three-year probationary period with no actual suspension.

The review department adopted the hearing panel's findings except for the finding of no moral turpitude. The review department found instead that

petitioner's conduct did involve moral turpitude. It modified the recommendation as to discipline to include 30 days' actual suspension because it concluded that the record demonstrated that petitioner deliberately backdated documents and that such conduct warranted actual suspension as a condition of probation.

■ Petitioner challenges the finding of moral turpitude. He contends that the evidence at most reveals gross carelessness in dealing with the documents presented him and that there is no evidence that he deliberately backdated documents with knowledge of their purpose. His contention, however, is premised on his interpretation of the record in the light most favorable to his position.

■ Petitioner, of course, bears the burden of showing that the findings of the State Bar are not supported by the evidence. (*Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty." (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].) ■ In passing on sufficiency of the evidence, we conduct an independent review of the record, resolving all reasonable doubts in favor of the attorney. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177]; *Prantil* v. *State Bar* (1979) 23 Cal.3d 243, 246 [152 Cal.Rptr. 351, 589 P.2d 859].)

■ The record contains about 900 pages of transcript from petitioner's criminal trial. Petitioner's knowledge of the backdating is shown in transcripts of conversations he had with the undercover agent on April 14 and April 16, 1981, which were recorded by the agent. The transcripts also reveal petitioner's knowledge that the purpose of the transaction was to obtain a tax writeoff and that it was being predated to December 1980.

Petitioner's argument that he did not really comprehend what was going on strains credulity. He asserts that he had no knowledge of tax shelters and no expertise in tax law. He submits an affidavit by Everett stating that he did not tell petitioner the purpose of the backdating and that he justified it on the ground that he and petitioner had a letter of understanding in December 1980 regarding use of petitioner's Rolls Royce in a sale/leaseback transaction. Petitioner also relies on a declaration from his therapist interpreting petitioner's assent to the agent's references about backdating as resulting from petitioner's passive personality—that is, that petitioner would have acted as if he knew what was going on even if he did not actually know.

Petitioner's showing is unpersuasive. The transcript clearly reveals his knowledge of the backdating, and it is impossible to believe that an intelligent

and experienced attorney, such as petitioner, would not have known what was going on when he signed the backdated sales contract on April 16, 1981, as part of a tax shelter plan. It would not take a tax expert to recognize that something was amiss. Such conduct evinces deceit and therefore involves moral turpitude. (See *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 793 [144 Cal.Rptr. 404, 575 P.2d 1186]; *In re Cooper* (1971) 5 Cal.3d 256 [95 Cal.Rptr. 646, 486 P.2d 174].)

We agree, however, with petitioner's argument that even if discipline is warranted, a period of actual suspension is inappropriate. ▉ Although the State Bar's recommendation is entitled to great weight, we exercise our independent judgment in determining the appropriate discipline to be imposed. (*Alberton* v. *State Bar, supra,* 37 Cal.3d at p. 14.) Our principal concerns, of course, are the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standards. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 709 [224 Cal.Rptr. 738, 715 P.2d 699].)

▉ Although a period of actual suspension would ordinarily be warranted when moral turpitude has been found, we are persuaded that there are compelling circumstances here which justify an exception. Petitioner was so devastated by the conviction that he was unable to practice law for three years. He began attempts to rebuild his practice in 1984. The conviction at issue here is the only blemish in petitioner's otherwise exemplary 24-year legal career. His misconduct was in connection with his personal affairs and he did not stand to gain any tax benefits. He was clearly a follower in this transaction and was overly trusting of Everett. We believe that the public will be adequately protected by the three-year probationary period. The 30-day period of actual suspension would be overly punitive under the circumstances.

Accordingly, it is ordered that Richard I. Chira be suspended from the practice of law for one year, that execution of the suspension be stayed and he be placed on probation for three years, upon the conditions set forth in the hearing panel's decision dated July 18, 1985, including taking and passing the Professional Responsibility Examination within one year from the effective date of this order. This order is effective 30 days from the filing of the opinion.

**REYNOSO, J.**—I respectfully dissent. The majority, in my view, err by not following the State Bar recommendation of *actual suspension* of 30 days as a condition of probation. Probation was set at three years. Indeed, the State Bar, perhaps influenced by the hearing panel's conclusion that no actual suspension was warranted, may have been too lenient.

Petitioner's transgressions, his participation in a clearly illegal scheme to shelter income, is egregious in the extreme—it is contrary to public policy (as would be the acts of a common burglar) and damaging to the confidence the public must have in the legal profession (the quintessence of a "shyster"). By his actions he has taken resources from the rightful owners (the people of this country) as surely as a mugger—yet the mugger or burglar goes to prison for years, while this petitioner continues to practice that honored profession which, since medieval days, has been considered one of three noble professions (the law, medicine, and the ministry). That the misdeed is a "white collar" crime is not a mitigating factor.

But do actual mitigating factors appear in the record? No! First, did the backdating of a document by this attorney arise from naivete? The transaction included petitioner's own Rolls Royce (Rolls Royce?) and, as the State Bar argues, was for petitioner's private economic benefit as well as a tax shelter for the third party. Second, does "embarrassment" mitigate the seriousness of the offense? White collar crime, in my view, is no more mitigated by "embarrassment" than would be the "street crime" of a burglar or mugger. Petitioner has embarrassed not just himself but the profession to which we all belong. His knowledge and position placed on him a high responsibility which he failed. That failure should bring discipline, for the protection of the public, appropriate to its seriousness.

I would accept the recommendation of the State Bar.

Bird, C. J., concurred.