[No. S006762. Aug. 24, 1989.]

In re PETER ROBERT CHERNIK on Suspension.

**COUNSEL**

Diane Elan Wick and Marguerite Mary Leoni for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Ellen R. Peck and Andrea T. Wachter for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review the recommendation of the State Bar Court that petitioner Peter Robert Chernik be suspended from the practice of law for three years, that the order of suspension be stayed and that he be placed on probation for three years on specified conditions including actual suspension for the first year.

Petitioner was admitted to practice in California in 1969. On October 19, 1982, he was convicted of conspiracy to defraud the United States by impeding the lawful function of the Internal Revenue Service (IRS) in violation of 18 United States Code section 371. The conviction was affirmed by the United States Court of Appeals, Ninth Circuit, in October 1984. (*United States* v. *Little* (9th Cir. 1984) 753 F.2d 1420.) We referred the matter to the State Bar for a hearing and report on whether the facts and circumstances surrounding the commission of the offense involved moral turpitude or other misconduct warranting discipline.

The hearing panel found: Petitioner's conviction resulted from an IRS "sting" operation involving Indec Financial Corporation, a real estate development company that sold interests in real estate limited partnerships. Petitioner was Indec's counsel for tax matters. In December 1980, an IRS agent posing as a representative for a group of investors contacted F. Thomas Little, chairman of Indec's board of directors. Little referred the agent to Peter Yost, Indec's salesperson, who explained Indec's investment programs. The agent was interested in sheltering $200,000 in the 1980 calendar year for a client. Yost offered to sell an interest in Bedford &

Company, a partnership in the Cayman Islands, and indicated that the client could still shelter income for calendar year 1980 even if actual payment for the interest was not made until 1981. It would be done by using a backdated subscription agreement and promissory note.

In February 1981, petitioner attended a meeting with the IRS agent and his purported wealthy client. Petitioner was introduced as Indec's attorney and theorist. Petitioner was present while Little explained the mechanics of using the backdated documents and advised the would-be investor not to inform his accountant of the backdating because communications with accountants are not privileged. Yost explained that in order for the client to have a full deduction for 1980 he would have to have entered the partnership before June 1, 1980. This would be done by using a backdated promissory note. The agents expressed indecision about whether to invest. The operation was then suspended for several months because of lack of government funding.

The agents resumed contact in late August and attended a meeting with petitioner, Yost, Little, and Grutchfield (Indec's president) in September 1981. The same arrangements were discussed for backdating the documents evidencing an investment in the Bedford partnership. Again, in petitioner's presence the use of a backdated promissory note and subscription agreement was explained. Since actual payment for the partnership interest would not be made during 1980, it was agreed that fraudulent dunning letters seeking payment during 1980 could be put in the file to document further the investor's entry into the partnership before June 1, 1980. The agent signed the backdated promissory note and asked that the dunning letters be provided. In petitioner's presence, Grutchfield explained to the agents that the only thing they would not want the IRS to know is that the promissory note is backdated.

A final meeting was held in October 1981 to consummate the transaction. Little gave the IRS agent four backdated dunning letters. The agent gave Little a check for $100,000. Shortly thereafter petitioner, Little, Grutchfield and Yost were arrested. Upon his conviction petitioner was sentenced to one year and one day in prison and fined $10,000. He has served his sentence and was released from Lompoc federal prison with no terms of probation or parole.

The hearing panel concluded that the facts and circumstances surrounding petitioner's conviction did not involve moral turpitude but did involve other misconduct warranting discipline. In light of petitioner's otherwise unblemished record since his admission in 1969, the hearing panel recommended that petitioner be suspended for one year, that the order of suspen-

sion be stayed and he be placed on probation for three years on specified conditions including ninety days of actual suspension.

The review department, by a 10-to-2 vote, adopted the findings and conclusion of the hearing panel with significant exceptions: It amended the findings to add a statement that petitioner was aware of and participated in the backdating scheme. It also amended the conclusions to state that the facts and circumstances surrounding petitioner's conviction involved moral turpitude. In light of this conclusion, the review department increased the recommended discipline to three years' suspension, with the order of suspension stayed and placement of petitioner on probation for three years on conditions including one year of actual suspension. The vote on discipline was eight to four; the four dissenters thought the degree of discipline was excessive.

Petitioner challenges the finding of moral turpitude. He agrees that his conviction may have demeaned the legal profession and acknowledges that some discipline may be appropriate, but he urges that it be no more than that recommended by the hearing panel.

Petitioner's argument against the finding of moral turpitude focuses primarily on the issue of the admissibility of the transcript of his federal trial. Much of the evidence at the federal trial consisted of the tape recordings of the defendants' meetings with the IRS agents. Petitioner moved to suppress the tape recordings and the trial transcript on the ground that they were inadmissible pursuant to Penal Code section 632.[1] Section 632 prohibits recording a confidential communication without the consent of all parties to

---

[1]Penal Code section 632 provides in pertinent part: "(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. . . . [¶] (b) The term 'person' includes an individual, business association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication. [¶] (c) The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded. [¶] (d) Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding. . . ."

it and makes any evidence obtained in violation thereof inadmissible "in any judicial, administrative, legislative, or other proceeding." (Pen. Code, § 632, subd. (d).) There is an exception for specified state and local law enforcement officers, but federal law enforcement officers are not listed. (Pen. Code, § 633.) The tape recordings, however, were lawfully obtained under federal law (18 U.S.C. §§ 2510-2520) and were thus lawfully admitted in petitioner's federal trial.[2] (See *United States* v. *Little, supra,* 753 F.2d at pp. 1434-1435.)

The hearing panel referee denied the motion to suppress on the ground that Business and Professions Code section 6102, subdivision (f) provides for the admission of the transcript of the trial resulting in the conviction.[3] The referee also relied on the holding of *Emslie* v. *State Bar* (1974) 11 Cal.3d 210 [113 Cal.Rptr. 175, 520 P.2d 991], giving the referee discretion whether to admit or exclude evidence that was obtained in violation of various state laws.

The principal evidence presented at the hearing was the transcript of the federal trial.[4] The State Bar examiner conceded that the recordings made by the IRS agents formed the essence of the case against petitioner at the federal trial. Although the federal case could have been presented through testimony of the agents themselves, the prosecution instead based its case primarily on the tape recordings which the agents had made of the transaction.

■ Petitioner's attack on the admissibility of the tape recordings is unavailing. He is in essence attempting to challenge his conviction by questioning the sufficiency of the evidence, an undertaking expressly barred by Business and Professions Code section 6101, which provides that "the record of conviction shall be conclusive evidence of guilt of the crime of which he or she has been convicted." (See *In re Kirschke* (1976) 16 Cal.3d 902, 904 [129 Cal.Rptr. 780, 549 P.2d 548].) The conviction conclusively established that petitioner conspired to defraud the United States by impeding the lawful functions of the IRS by the use of backdated documents to support

---

[2] The same issue was raised recently in *In re Berman* (1989) 48 Cal.3d 517 [256 Cal.Rptr. 802, 769 P.2d 984], involving a federal conspiracy conviction (18 U.S.C. § 371) resulting from a Federal Bureau of Investigation "sting" operation regarding a money "laundering" scheme. We found it unnecessary to decide the question of the admissibility of the recordings taped by federal agents because the evidence was sufficient to support the findings without reference to the tapes. One of the agents testified extensively at the State Bar hearing regarding the attorney's participation in the scheme.

[3] Business and Professions Code section 6102, subdivision (f) provides: "The record of the proceedings resulting in the conviction, including a transcript of the testimony therein, may be received into evidence."

[4] Other evidence presented was testimony by petitioner and two tax lawyers asserting the legality (or, at least, nonillegality) of the backdating. Petitioner also submitted six letters in support of his good moral character.

unlawful tax deductions. ■ Petitioner's claim that he reasonably believed the backdating to be lawful was resolved against him in the federal trial. The jury was instructed that "if you find that a defendant reasonably believed that the sale or assignment of his entire partnership interest in 1981, after the close of the calendar year 1980, was permissible under the Internal Revenue Code, even if the transaction was not valid under the Internal Revenue Code, then such a defendant cannot have entertained the required specific intent under the conspiracy law, and is entitled to acquittal." (See *United States* v. *Little, supra,* 753 F.2d at pp. 1432-1433.) Thus petitioner's conviction necessarily involves rejection of petitioner's claim that he reasonably believed in good faith that the backdating was legal.

The tape recordings were not themselves admitted into evidence at the State Bar hearing. A transcription of them was included as part of the transcript of the federal trial where they had been properly introduced. Business and Professions Code section 6102, subdivision (f), expressly provides for the admission of the transcript of the trial resulting in the conviction. ■ Where, as here, the trial transcript was properly admitted into evidence, we will not scrutinize it to determine whether individual items in it would have been directly admissible in a state court trial.[5]

Petitioner further argues that even if the transcription of the tape recordings was properly admitted, the record still does not support the review department's finding of moral turpitude. We disagree. Petitioner's argument is based on his claim of a good faith, reasonable belief in the legality of the backdating of the documents. As previously mentioned, that claim was resolved adversely to petitioner by the jury's guilty verdict. The jury necessarily rejected his claim of reasonable belief in the legality of the transaction. ■ The illegal use of backdated documents in a tax shelter scheme to allocate partnership losses to a partner prior to his entry into the partnership evinces deceit and therefore involves moral turpitude. (See *In re Chira* (1986) 42 Cal.3d 904, 908-909 [231 Cal.Rptr. 560, 727 P.2d 753].)

There remains, however, the question of the appropriate discipline to be imposed. ■ Although the State Bar's recommendation is entitled to great weight, we exercise our independent judgment in determining the appropriate discipline to be imposed. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].) Our principal concerns are the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standards. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 709 [224 Cal.Rptr. 738, 715 P.2d 699].)

---

[5] Since it is unnecessary for resolution of the issue in this case, we leave open the question whether the tape recordings themselves would have been admissible in a California court.

The present case bears many similarities to *In re Chira, supra,* 42 Cal.3d 904, which also involved conviction of conspiracy to impede the lawful function of the IRS in violation of 18 United States Code section 371. The conviction there also resulted from an IRS "sting" operation in which the attorney, as part of a tax shelter scheme, signed a backdated conditional sales contract for a Rolls Royce he owned. We upheld the review department's finding of moral turpitude but concluded that a period of actual suspension, as recommended by the review department, would be overly punitive under the circumstances. The attorney had an otherwise unblemished record in his 24-year legal career. He had been devastated by the conviction and had just begun attempts to rebuild his practice after three years of being too upset to practice. The misconduct was in connection with his personal affairs, and he did not stand to gain any tax benefits himself.

■ Although petitioner here has an otherwise unblemished record in his 20 years of practice, his situation differs from that in *Chira* because his misconduct was directly related to the practice of law. Accordingly, we conclude that the State Bar's recommendation should be adopted.

It is hereby ordered that Peter Robert Chernik be suspended from the practice of law in the State of California for a period of three years, that execution of the order of suspension be stayed and he be placed on probation for three years upon all the conditions, including actual suspension for one year, which are set forth in the resolution adopted by the State Bar Court in this matter on April 12, 1988. It is further ordered that Chernik take and pass the Professional Responsibility Examination within 1 year of the effective date of this order, that Chernik comply with the provisions of rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply may result in imprisonment. (See Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)