[No. S009303. Oct. 18, 1990.]

JAMES EDWARD MORGAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Richard L. Garrigues for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Peter M. Eng for Respondent.

**OPINION**

**THE COURT.**—In this proceeding we review the unanimous recommendation of the State Bar Court that petitioner James Edward Morgan be disbarred from the practice of law in California. Petitioner contends that certain findings and conclusions of the State Bar Court are not supported by the evidence, and that the recommendation of disbarment is unduly harsh and excessive.

Because the record shows that petitioner engaged in the unauthorized practice of law while under suspension and obtained a pecuniary interest adverse to his client in violation of former rule 5-101 of the Rules of Professional Conduct (rule 5-101), we adopt the State Bar's recommendation and conclude that petitioner should be disbarred.

## I. BACKGROUND

Petitioner was admitted to the practice of law in California on June 4, 1957. He has previously been disciplined for misconduct in five instances. On July 19, 1962, we ordered that petitioner be suspended for six months for misappropriation of client funds (Bar Misc. No. 2698). On July 3, 1963, petitioner was found to have engaged in the unauthorized practice of law while under suspension and was suspended for two years (Bar Misc. No. 2843). The suspension was stayed, and petitioner was placed on probation for two years. On May 25, 1966, we ordered that petitioner be suspended for three years, stayed, with three years' probation, and one year's actual suspension for his misconduct in two personal injury cases (Bar Misc. No. 3045). Petitioner was found to have settled both cases without the consent of his clients, to have signed clients' endorsements, and to have misappropriated client trust funds. On July 25, 1984, we ordered that petitioner be suspended for five years, stayed, with five years' probation under conditions that included six months' actual suspension (Bar Misc. No. 4753). Once again, petitioner was found to have misappropriated client trust funds in a personal injury action. Finally, on October 1, 1986, petitioner was found culpable of failure to communicate with a client and failure to perform the services for which he was retained.[1] We ordered that the period of probation imposed under Bar Miscellaneous No. 4753 be extended one year for a total period of six years and that the actual suspension be extended to one year (Bar Misc. No. 5098).

---

[1] The fourth and fifth disciplinary proceedings should be treated as one prior disciplinary proceeding in accordance with the finding made by the hearing panel in the latter proceeding. These two matters, being contemporaneous in time and subject to the same mitigating and aggravating considerations, should have been consolidated.

Viewed together, the prior instances of misconduct span a period of 22 years (1960-1982).

The instant disciplinary proceeding concerns two counts of misconduct. In the first count, petitioner was found culpable of practicing law while under suspension, by acting as attorney for Arneda Howard Carter (Carter). In count two, it was found that petitioner, while acting as an attorney for Carter, entered into an unfair credit transaction with Carter, the terms of which were neither fully explained to Carter nor reduced to writing.

A hearing on both counts was conducted before a hearing panel on May 24, 25, and 26 and July 7, 1988. On August 3, 1988, the hearing panel issued its decision finding petitioner to be culpable of practicing law while under suspension in violation of Business and Professions Code sections 6125 and 6126 and of obtaining a pecuniary interest adverse to his client in violation of rule 5-101. On February 6, 1989, the review department issued a unanimous decision adopting the hearing panel's findings of fact and recommending that petitioner be disbarred.

## II. DISCUSSION

In attorney disciplinary matters we independently examine the record, reweigh the evidence and pass on its sufficiency. (*Farnham* v. *State Bar* (1988) 47 Cal.3d 429, 433 [253 Cal.Rptr. 249, 763 P.2d 1339]; *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699]; *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) The findings of the State Bar, however, are entitled to great weight, and the burden falls upon petitioner to show that the findings are not supported by convincing proof of a reasonable certainty, or that the decision is erroneous or unlawful. (*Farnham* v. *State Bar, supra,* 47 Cal.3d at p. 433; *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 677 [244 Cal.Rptr. 462, 749 P.2d 1317].)

### A. Count 1: Practicing Law While Under Suspension

Petitioner contends that the evidence does not support the review department's conclusion that he wilfully disobeyed or violated the order of suspension by engaging in the practice of law.[2] We disagree and conclude that petitioner did engage in the practice of law while under suspension. This conclusion is premised on four separate findings made by the hearing panel, each of which is supported by substantial evidence.

---

[2] Petitioner was suspended from the practice of law from August 24, 1984, to February 25, 1985, pursuant to our order in Bar Miscellaneous No. 4753.

First, on November 14, 1984, petitioner, while under suspension, received $758 as partial payment of legal fees to represent Carter in a dissolution action. Although petitioner testified that Carter retained him as her attorney in March of 1984, when he was not under suspension, he could not produce a receipt. In contrast, Carter testified that on November 14, 1984, petitioner quoted a fee of $1,100 and that she paid him $454 in cash and $304 in two third party checks. Carter further testified that petitioner did not provide her with a receipt, a written fee agreement or a written memorandum of services. Christine Salsbury testified that she saw petitioner receive the partial fee and that she endorsed two of her employer's checks as a portion thereof. Her checks were from BSC Alloys for $100 and $204. Although there was conflicting evidence, we conclude that the hearing panel properly found that petitioner accepted a legal fee from Carter on November 14, 1984. ■ In so concluding, we note that on matters of credibility great weight is given to the findings of the hearing panel which had the opportunity to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony. (*Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 569 [238 Cal.Rptr. 54, 737 P.2d 1338].)

Second, petitioner assisted in the preparation of legal documents filed in Carter's dissolution case. Specifically, petitioner assisted in the drafting of the declaration by Carter dated November 15, 1984, and an income and expense declaration by Carter dated November 15, 1984. The information contained in these documents was given to petitioner by Carter. While another attorney's signature is on both of these documents, the documents show petitioner as the attorney of record.

Third, petitioner became attorney of record in Carter's pending dissolution case by entering an appearance on November 21, 1984. Victor Brown, the attorney for Carter's estranged husband, testified that he discussed settling the case with petitioner and that the two of them decided that the matter was not ready to be heard and should be continued to December 14th.

Petitioner contends that he was not present in court when the stipulation was acted upon and therefore cannot be said to have made an appearance as attorney of record. ■ We note, however, that "[t]he cases uniformly hold that the character of the act, and not the place where it is performed, is the decisive element, and if the application of legal knowledge and technique is required, the activity constitutes the practice of law . . . ." (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 543 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036], citing Annot., What Amounts to Practice of Law (1937) 111 A.L.R. 19, 32.) ■ Here, petitioner was engaged in negotiations with opposing counsel in the hope of obtaining a settlement and

agreed with counsel that the case was not ready to be heard by the court. Petitioner's contention, that he was not "engaged in the practice of law" because the negotiations took place in the hallway outside the courtroom rather than before a judge, is without merit. The practice of law includes not only appearing in a court of law but also the giving of "legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be [pending] in a court." (*People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 363], quoting *Eley* v. *Miller* (1893) 7 Ind.App. 529 [34 N.E. 836]; see also *Arm* v. *State Bar* (1990) 50 Cal.3d 763, 773-774, 778 [268 Cal.Rptr. 741, 789 P.2d 922] [preparation of stipulation and cover letter for mandatory settlement conference while under suspension may constitute practice of law].) Similarly, we conclude that engaging in negotiations with opposing counsel concerning settlement and agreeing that the case should be continued until a later date, constitutes the practice of law.

Fourth, on December 14, 1984, petitioner associated attorney Lee Reed to appear in court for him on behalf of Carter. As there was no fee arrangement between Reed and Carter, the hearing panel properly concluded that there was a clear inference of compensation to Reed from petitioner. The record shows that at the December 14, 1984, hearing, Reed and petitioner appeared as cocounsel.

Petitioner notes in his defense that the hearing panel found that he did not "hold himself out" to Carter as one entitled to practice law in California. In fact, petitioner told Carter that he was under suspension and therefore could not represent her in court. Petitioner's defense that he did not deceive his client does not, however, serve to diminish the overwhelming evidence that petitioner was engaged in the practice of law in California in violation of Business and Professions Code sections 6125 and 6126. The evidence clearly shows that while petitioner was under suspension from the practice of law, he accepted a retainer fee from a new client; made an appearance as her attorney of record in a pending case; discussed settlement with opposing counsel; aided in the preparation of legal documents for a court hearing; filed a legal document listing himself as the attorney of record in the case; stipulated to a continuance of the hearing; and associated another attorney to make a court appearance on behalf of his client.

While there may be a gray area between what does and does not constitute the "practice of law," this is not such a case. The evidence shows a clear pattern of conduct which cannot otherwise be construed. We conclude, therefore, that petitioner engaged in the practice of law while under suspension.

## B. Count 2: Violation of Rule 5-101

■    The State Bar Court found by clear and convincing evidence that petitioner, while acting as an attorney, entered into an unfair open-ended credit transaction with his client. The terms of the agreement were not fully explained nor were they reduced to writing. Moreover, the transaction resulted in petitioner acquiring a pecuniary interest adverse to his client in violation of rule 5-101.[3]

Petitioner contends that the rule 5-101 violation was not serious and caused little or no harm to his client. We disagree.

Petitioner and Carter were social friends. For several weeks during the spring months of 1984, Carter lived in the home of Mr. and Mrs. Johnson, where petitioner was a frequent dinner guest. Petitioner was temporarily separated from his wife and Carter's husband was seeking a dissolution of their marriage.

In November 1984, Carter was concerned that her delinquent American Express account would affect her credit rating and entered into an agreement with petitioner whereby he would pay her American Express account balance of $1,383. In return, petitioner would be given written authorization to use Carter's Nordstrom credit card to purchase Christmas presents for his children. The agreement was not in writing. On November 10, 1984, petitioner paid the American Express account in full. On December 7, 1984, petitioner purchased $1,010.07 worth of Christmas presents for his children on Carter's Nordstrom account.

Also in November 1984, Carter allowed petitioner to use her Neiman-Marcus charge card, a new account Carter had never used. The testimony as to the limits placed on petitioner's use of the Neiman-Marcus card was in conflict. Carter testified that petitioner was authorized to make purchases only on November 27, 1984. She further testified that petitioner stated he would pay her for the charges "as soon as [she] got the bill." Petitioner maintains, however, that Carter told him that if he "would take [the] case,

---

[3] On May 27, 1989, new rules of Professional Conduct became operative. All references to rule 5-101 are to the former Rules of Professional Conduct of the State Bar of California.

Rule 5-101 concerned avoiding adverse interests (see now rule 3-300) and provided: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

that [he] could use [her] credit cards and repay those credit cards once [he] went back to practice, when the suspension was over." Carter denied that she made this statement to petitioner.

The record discloses that on November 27, 1984, Carter went with petitioner to Neiman-Marcus and petitioner bought suits for which Carter signed. Carter's Neiman-Marcus statement, however, showed purchases of men's shirts, a coat and a pair of men's shoes on November 26, and men's hosiery and more shirts on November 30. Carter testified that she did not authorize these additional purchases. When she later asked petitioner about the charges, she was told not to worry, he would pay; petitioner said that he would make a great deal of money when reinstated.

In December, petitioner used the Neiman-Marcus card again, this time to purchase $1,174.70 in clothing and men's sundries. Carter testified that she did not authorize these purchases. At the end of December 1984, the total Neiman-Marcus account was $4,674.28, with a minimum payment due of $1,626.60. Petitioner made one $1,500 payment on Carter's account, but thereafter failed to make any subsequent payments. In February 1984, Carter met with the Neiman-Marcus credit department to discuss her delinquent account, and in October 1985 the account was sent to collection.

The record shows that petitioner had knowledge of Carter's financial condition. He prepared the income and expense statement relating to matters of her dissolution case which gave him an accurate appraisal of her assets. Moreover, petitioner knew that Carter was relying on him to service the account as he had assured her that he would do. It was not until August of 1986, however, that petitioner settled the account with Neiman-Marcus. In the interim, Carter's credit was questioned and she filed a chapter 7 petition in bankruptcy.

The record clearly demonstrates that petitioner took unfair advantage of Carter by using her credit cards without a written agreement; that petitioner made unfulfilled promises to Carter to repay the delinquent account balances; and that petitioner acquired a pecuniary interest adverse to his client's when he failed to make payments, thereby gaining a personal advantage at his client's expense. We conclude, therefore, that petitioner violated rule 5-101 by entering into the agreement to use his client's credit cards.

### C. Appropriate Level of Discipline

■ "While giving great weight to the State Bar's recommendation, we exercise our independent judgment in determining the appropriate degree of discipline to be imposed. [Citation.]" (*Warner* v. *State Bar* (1983) 34 Cal.3d

36, 43 [192 Cal.Rptr. 244, 664 P.2d 148].) Petitioner contends that the sanction of disbarment is excessive in view of the nature of the wrongful conduct. We do not agree.

■ The Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V; all further references to standards are to these provisions) provide that the appropriate level of discipline for practicing law while under suspension is disbarment or suspension depending upon the gravity of the offense and the harm, if any, to the victim. (Std. 2.6.) The presumptively appropriate level of discipline for a violation of rule 5-101 is suspension, unless the misconduct and harm to the client are minimal, in which case the degree of discipline is reproval. (Std. 2.8.) Finally, standard 1.7(b) provides: "If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed and the member has a record of two (2) prior impositions of discipline as defined by standard 1.2(f), the degree of discipline . . . shall be disbarment unless the most compelling mitigating circumstances clearly predominate."

With these standards in mind, we conclude that the appropriate level of discipline is disbarment. Petitioner has been found culpable in four prior disciplinary proceedings.[4] Unlike standard 1.7(a), standard 1.7(b) makes no distinction between recent and remote prior disciplinary proceedings. Moreover, petitioner's behavior demonstrates a pattern of professional misconduct and an indifference to this court's disciplinary orders; this is the *second* time that petitioner has been found culpable of practicing law while under suspension.

During petitioner's 31 years as an attorney, he has been under suspension for an accumulated period of 2 years and has been on probation for an accumulated period of 11 years.

In mitigation, petitioner offered five witnesses who testified that they have confidence in his ability as an attorney and would recommend him to others. In addition, petitioner presented evidence of his contribution to his community. He was a founder of the Challengers Boys' Club, an organization designed to serve underprivileged boys, and served on its board of directors. Petitioner also contributed pro bono legal services to the Boys' Club and to the Youth Intervention Program, a program used by the Los Angeles Unified School District, the courts and other public agencies. Petitioner periodically speaks to the children placed in that program.

Finally, the hearing panel found that the present violation of practicing law while under suspension appears to have been an isolated incident inas-

---

[4] For the purposes of this discussion, we treat disciplinary proceedings 4 and 5 as a single proceeding.

much as there was no suggestion that petitioner undertook to represent anyone else during this most recent period of suspension.

While we are not insensitive to the contribution petitioner has apparently made to his community, he has not demonstrated that "compelling mitigating circumstances" predominate in this case. Therefore, we conclude that the recommended discipline of disbarment is warranted.

## III

It is ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. It is further ordered that petitioner comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)