[L.A. Nos. 31396, 31535. July 1, 1982.]

JAMES A. GORDON, JR., Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

James A. Gordon, Jr., in pro. per., Weitzman, Fidler & Re, Howard L. Weitzman, Larry Fidler, Donald M. Re and Scott S. Furstman for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Darlene Marie Azevedo for Respondent.

OPINION

THE COURT.—Petitioner, James A. Gordon, Jr., was admitted to the practice of law in California on June 6, 1961, and has no prior disciplinary record. He is the subject of two separate disciplinary proceedings which we have consolidated for purposes of argument and opinion. (See *Ambrose v. State Bar* (1982) 31 Cal.3d 184, 186 and fn. 1 [181 Cal.Rptr. 903, 643 P.2d 486]; *Fitzpatrick v. State Bar* (1977) 20 Cal.3d 73, 78 [141 Cal.Rptr. 169, 569 P.2d 763].)

The first matter (L.A. 31396) involves petitioner's admitted professional misconduct, including misappropriation, in seven separate

matters occurring between 1974 and 1978. For such misconduct, the State Bar has recommended that he be suspended from the practice of law for a period of five years, and that execution be stayed upon specified conditions of probation, including 90 days of actual suspension and restitution to his clients.

The second matter (L.A. 31535) involves four additional acts of misconduct occurring prior to the State Bar's decision in the first matter. For such misconduct, the State Bar has recommended that petitioner be suspended for five additional years, that execution be stayed upon conditions including two years' actual suspension, and that such discipline run consecutively with any suspension imposed by us in L.A. 31396.

Upon notifying petitioner that we were considering the imposition of more severe discipline than recommended by the State Bar, petitioner filed petitions for review of both of the foregoing decisions. As will appear, we have concluded that he should be disbarred because of the serious and repeated nature of his misconduct, which we now examine.

I. *L.A. 31396*

After these disciplinary proceedings were commenced, petitioner stipulated to the pertinent facts, and further hearings were directed solely to the question of appropriate discipline. On April 9, 1980, a three-member hearing panel filed its decision, and on September 2, 1980, the Review Department of the State Bar Court, following a hearing, amended the hearing panel's findings by adding a finding regarding certain mitigating factors and adopted the panel's decision, as amended.

The stipulation executed by petitioner (and not challenged herein) discloses that petitioner (1) intentionally misappropriated and commingled clients' settlement proceeds in seven matters in the aggregate amount of $27,121.82; (2) failed and refused promptly to pay to clients in four matters the funds which belonged to them; (3) owed at least $11,000 to three clients at the time disciplinary proceedings were commenced; (4) issued to a client a check which was returned by his bank for insufficient funds; (5) intentionally refused to respond to inquiries from, or to communicate with, five clients; (6) intentionally refused to perform for one client services for which he had been retained; and (7) intentionally misled clients as to the status of their funds and when they might expect payment.

We briefly describe the specific facts underlying the foregoing misconduct.:

### 1. *The "A" Matter*

Petitioner was retained by Olivia "A" to represent her in a personal injury claim. Her claim was later settled for $2,500, but petitioner intentionally refused to pay to Mrs. "A" her share ($1,691.90) of the proceeds, or to respond to her inquiries, despite his earlier representation to her that the funds would be paid within 10 days. Petitioner withdrew $1,900 of Mrs. "A"'s funds from his trust account and intentionally misappropriated and commingled those funds for his own use. Petitioner thereupon repaid her funds to Mrs. "A" only after being advised by the State Bar regarding her complaints against him.

### 2. *The "B" Matter*

Estelle "B" retained petitioner to represent her in a personal injury claim and suit was filed. The claim was settled for $3,600, and petitioner intentionally misappropriated a substantial portion of the proceeds, and further refused and failed to pay a medical bill incurred by Mrs. "B." Six months after petitioner was notified by the State Bar of her complaint, petitioner paid Mrs. "B" the monies owing to her.

### 3. *The "C" Matter*

Jewel "C" retained petitioner to prosecute her personal injury claim which was settled and petitioner received $869 to pay Ms. "C"'s medical expenses. Petitioner thereafter intentionally failed and refused to pay these expenses and instead misappropriated and commingled the settlement proceeds to his own use and benefit. Nine months after being advised by the State Bar of Ms. "C"'s complaint, petitioner paid the medical expenses.

### 4. *The "D" Matter*

Hazel "D" retained petitioner to prosecute her personal injury claim arising out of injuries sustained at a social security office. Petitioner agreed to pursue an action against the owner of the building where Ms. "D" was injured, and to file a damage claim against the Social Security Administration. Petitioner intentionally failed and refused to file the latter claim. He proceeded against the building owner and settled the

action for $1,250, which sum he intentionally misappropriated and commingled to his own use and benefit. Thereafter, petitioner intentionally failed and refused to communicate with Ms. "D" regarding the status of her funds, and failed to repay her until the State Bar had advised him of her complaint.

### 5. *The "E" Matter*

Joseph "E" retained petitioner to represent him in a personal injury claim. The claim was settled for $12,000 but petitioner intentionally misappropriated and commingled a substantial portion of his client's share of the settlement proceeds, and at the time of the disciplinary hearing, he had not fully repaid Mr. "E."

### 6. *The "F" Matter*

Frank "F" retained petitioner to prosecute a personal injury claim. The claim was settled for $9,500, but petitioner intentionally misappropriated and commingled a substantial portion thereof to his own use, and failed and refused to communicate with Mr. "F" regarding the funds. At the time of the disciplinary hearing, petitioner had not repaid his client.

### 7. *The "G" Matter*

Georgia "G" retained petitioner to prosecute a personal injury claim. The claim was settled for $7,500, and petitioner issued to his client a postdated check for $5,000 on his business account. The check was not honored because of insufficient funds. Petitioner intentionally misappropriated and commingled the settlement funds, and failed and refused to communicate with his client regarding her share of the proceeds. Petitioner still had not repaid Ms. "G" by the time the disciplinary hearing was held.

By way of mitigation, petitioner contends that he was under extreme financial pressure because of the dissolution of his law partnership and his assumption of partnership obligations to clients. While the partnership was in existence, petitioner did not personally handle clients' funds, entrusting his secretary and law partner with the task. When he learned that checks were being returned for insufficient funds, he commenced the practice of using one client's settlement funds to repay other clients. As petitioner testified, "When [the clients] looked to me, I paid them

whatever funds I had available. And if I paid, I paid 'A' with 'B's' funds. Then I had to pay 'B.' I got caught." Petitioner also admitted that he used his clients' monies to pay his office overhead expenses.

In addition to the foregoing, petitioner's marriage was dissolved, resulting in additional emotional and financial difficulties.

In light of petitioner's testimony, the review department made the following additional findings: "Respondent [Gordon] was under severe pressure from business and personal problems. Respondent has no prior record of discipline. Respondent shows great remorse concerning his conduct and has demonstrated his sincere concern for the welfare of his clients indicating that, in the future, he will likely provide the high standard of performance expected of an attorney."

As noted, the State Bar recommended that petitioner be suspended for five years, that execution of suspension be stayed, and that petitioner be placed on probation with conditions including a 90-day actual suspension. (Two of the eight members of the State Bar Court believed the recommended discipline was insufficient in light of the gravity of petitioner's offenses.)

II. *L.A. 31535*

Pursuant to stipulation in the second group of cases, petitioner admitted the following facts:

1. *The "H" Matter*

Petitioner was retained in July 1974 by Esther "H" to represent her in a personal injury claim. The claim was settled for $7,500, and petitioner agreed to retain $1,735 of those funds for payment of a medical lien. Contrary to his agreement, petitioner refused to pay the lien or to communicate with his client regarding the matter. In May 1976, petitioner intentionally withdrew $1,750 from his clients' trust account and misappropriated that sum, commingling it with his own personal account.

2. *The "I" Matter*

Petitioner was retained by Sue "I" in November 1977 to represent her in a dissolution action. Although he was paid a $350 retainer, peti-

tioner thereafter failed to return his client's telephone calls and letters, and failed to communicate with her regarding the status of her case. Ms. "I" eventually contacted the county clerk's office and learned that petitioner's motions for reconsideration and new trial in her case had been denied as untimely and lacking necessary documentation.

### 3. *The "J" Matter*

In May 1978, petitioner was retained by Marilyn "J" to represent her in a personal injury claim. The claim was settled for $4,000, of which $985 was to be paid for medical expenses. Petitioner failed and refused to send to his client's physician the check written and endorsed for that purpose and declined to communicate with his client regarding the matter. In January 1979, petitioner intentionally misappropriated and commingled "a substantial portion" of the $985 which he held for the benefit of his client.

### 4. *The "K" Matter*

In March 1979, petitioner was retained by Joseph "K" to represent him in a pending action. The case was settled for $4,000, payable in installments of $1,000 monthly until paid. On October 29, 1979, petitioner drew a check on his trust account for $1,334 in payment of a portion of the monies owing to his client, but the bank refused payment because of insufficient funds in the trust account.

After October 1979, petitioner refused to communicate with "K" regarding the status of his funds. Eventually, petitioner represented to his client that nonpayment of his check had been a "bank error," and falsely stated that there were presently sufficient funds in the account to cover the check. Petitioner intentionally misappropriated and commingled "a substantial portion" of the $1,334 in funds held for his client.

Petitioner further stipulated that the foregoing acts and omissions violated sections 6067, 6068, 6103 and 6106 of the Business and Professions Code, and rule 8-101 of the Rules of Professional Conduct.

As mitigating factors, the hearing panel in L.A. 31535 additionally found that (1) none of petitioner's clients ultimately lost money or was prejudiced by petitioner's acts; (2) petitioner did not intend to injure his clients; and (3) all of petitioner's acts of misappropriation and commingling occurred prior to the issuance of the State Bar's decision in L.A.

31396, discussed above. The hearing panel (by a two-to-one vote) recommended a five-year suspension, with probation conditions including two hundred ten days of actual suspension, to run concurrently with any suspension imposed by us in L.A. 31396.

On August 19, 1981, the Review Department of the State Bar Court adopted the hearing panel's findings, but added the further significant findings that: (1) two of petitioner's acts of misappropriation and commingling occurred after issuance and service on petitioner of notices to show cause in L.A. 31396; (2) L.A. 31396 involved seven separate acts of misappropriation and commingling during 1974 through 1978; and (3) with regard to the "J" matter, petitioner disobeyed written instructions from his client regarding payment of funds to her physician.

The review department (by a seven-to-four vote) recommended a five-year suspension, with a probation which would include two years' actual suspension, to run consecutive to any punishment we impose in L.A. 31396. The four dissenters recommended disbarment.

Petitioner now seeks to disavow his stipulation to the facts surrounding his misconduct in L.A. 31535. He asserts various grounds, claiming, first, that he executed the stipulation under a mistaken belief that the State Bar would retain the burden of proving petitioner guilty of "wilful misconduct." Yet, petitioner's failure to appreciate the correct legal standard governing review of his case would not constitute a proper ground for rescinding a stipulation, especially at this late stage of the proceedings. (Petitioner failed to raise the issue before the State Bar.)

Petitioner also suggests that there was no "consideration" given to support the stipulation, but cites no authority which would require any consideration other than the mutual convenience to the parties of establishing the relevant *facts* without the necessity of a prolonged contested hearing. We do relieve him, however, of his stipulation that his conduct violated various statutes and State Bar rules. This stipulation is a *legal conclusion* which we have held may be withdrawn upon being notified that we are considering more severe discipline than that recommended. (*Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].)

Finally, petitioner objects to "highly prejudicial" and allegedly incorrect statements made by a State Bar examiner during review department hearings. According to petitioner, the examiner falsely

represented to the review panel that petitioner withheld payment in both the "J" and "K" matters until complaints were filed with the State Bar. In fact, petitioner asserts, payments were made prior to the filing of any complaints. Assuming that petitioner's version of the facts is correct, those facts should have been presented at the hearing to rebut the examiner's statements. In any event, neither the hearing panel nor the review department purported to rely upon the asserted misstatement. Similarly, we do not base our decision thereon.

III. *Summary*

In L.A. 31396, between 1974 and 1978, petitioner committed seven separate acts of intentional misappropriation and commingling, failed to pay four clients the funds which belonged to them, refused on five occasions to communicate with clients, and committed the additional acts of issuing a bad check, refusing to perform services, and intentionally misleading clients regarding the time of repayment.

In L.A. 31535, between 1974 and 1979, petitioner committed three additional acts of intentional misappropriation and commingling, failed to communicate with three clients, disobeyed one client's written instructions, issued one bad check, and committed one act of misrepresentation. Significantly, two acts of misappropriation and commingling (the "J" and "K" matters) occurred in 1979, *after* petitioner had been notified and served by the State Bar with an order to show cause in L.A. 31396.

██ Although the State Bar's recommendation as to discipline is entitled to great weight (*Goldman* v. *State Bar* (1977) 20 Cal.3d 130, 140 [141 Cal.Rptr. 447, 570 P.2d 463]), we exercise our independent judgment in determining the appropriate punishment for professional misconduct (*Weir* v. *State Bar* (1979) 23 Cal.3d 564, 576 [152 Cal.Rptr. 921, 591 P.2d 19]). ██ Misappropriation of a client's settlement proceeds "is a most grievous breach of professional ethics and morality, and such conduct is certain to endanger the confidence of the public in the legal profession. [Citations.] The usual discipline imposed for such a breach is disbarment, in the absence of strong mitigating circumstances. [Citations.]" (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 746-747 [111 Cal.Rptr. 905, 518 P.2d 337]; accord *Rogers* v. *State Bar* (1980) 28 Cal.3d 654, 658 [170 Cal.Rptr. 482, 620 P.2d 1030]; *Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 403 [158 Cal.Rptr. 869, 600 P.2d 1326].) In addition, petitioner's failure to perform ser-

vices for his clients and his disregard for their interests warrants substantial discipline. (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; *Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].) Finally, issuance of checks to clients without sufficient funds to honor them is ground for discipline. (*Mack* v. *State Bar* (1970) 2 Cal.3d 440, 443 [85 Cal.Rptr. 625, 467 P.2d 225].)

■ We acknowledge the presence of some mitigating circumstances in this case which in other cases we have recognized as bearing upon the appropriate discipline. (See *In re Arnoff* (1978) 22 Cal.3d 740, 747 [150 Cal.Rptr. 479, 586 P.2d 960] [marital difficulties]; *In re Dedman* (1976) 17 Cal.3d 229, 234 [130 Cal.Rptr. 504, 550 P.2d 1040] [no prior disciplinary record; prompt restitution]; *Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 747 [financial difficulties].) ■ On the other hand, "Whatever the reason for an attorney's misconduct, our concern is and must be the protection of the public in the high duties of an attorney, the preservation of public confidence in the legal profession, and the maintenance of the highest professional standards for attorneys," and these matters are our ultimate consideration. (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387 [90 Cal.Rptr. 420, 475 P.2d 652]; accord *Finch* v. *State Bar, supra,* 28 Cal.3d 659, 666.)

■ We conclude that petitioner's repeated and persistent misconduct in multiple cases, and continuing after he had become aware of the State Bar's commencement of formal proceedings against him, readily warrants his disbarment. As the State Bar observes in its brief in L.A. 31535, the review department's recommendation "appears lenient in light of the circumstances of this case."

Accordingly, it is ordered that James A. Gordon, Jr., be disbarred from the practice of law in this state and that he comply with rule 955, subdivision (a), of the California Rules of Court within 30 days of the effective date of this order, and with subdivision (c) of that rule within 60 days of such effective date. This order is effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied August 4, 1982, and the opinion was modified to read as printed above.