[No. S006373. Apr. 17, 1989.]

TERRY L. KENNEDY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Terry L. Kennedy, in pro. per., for Petitioner.

Lawrence C. Yee for Respondent.

OPINION

**THE COURT.**\*—We review the unanimous decision of the Review Department of the State Bar Court that petitioner Terry L. Kennedy be disbarred from the practice of law in California. After considering the record and petitioner's objections, we adopt the review department's recommendation.

### FACTS

Petitioner is 43 years old, and was admitted to practice law in California in 1975. From 1976 to 1980, he was in partnership with Attorney MacDonald Jackson in Los Angeles. He was not steadily employed again until 1983, when he worked for a brief period for the law firm of Jacoby & Meyers. In May 1984, he accepted a position with the Los Angeles City Attorney's office, and stayed there until November 1985. Since that time, petitioner has not worked in the legal profession. The State Bar has never disciplined him previously, and no complaints have been filed against him with the State Bar since 1981.

The review department's recommendation stems from petitioner's mishandling of three cases in 1980 and 1981: the Chubbs, Williams and Gibson matters. Petitioner does not challenge the State Bar's findings of fact in these cases.

#### The Chubbs Matter

Petitioner misappropriated over $8,000 while representing the Chubbs family in a personal injury lawsuit stemming from an automobile accident.

---

\*Before Lucas, C. J., Panelli, J., Eagleson, J., Kaufman, J., and Franson (Donald R.), J.†

†Presiding Justice, Court of Appeal, Fifth Appellate District, assigned by the Chairperson of the Judicial Council.

He first failed to pay the Chubbses' medical bills from the settlement proceeds. When the Chubbses signed their contingent fee agreement, they authorized petitioner to pay their medical expenses directly from the settlement proceeds. In August 1980, petitioner settled the case with the other party's insurance carrier and gave the Chubbses a settlement disbursement statement reflecting the amounts allotted to their individual recoveries, his contingency fee, and $4,060.82 in payments to certain medical providers. Although he received the settlement funds personally, there were insufficient funds in the client trust account when he wrote checks to the Chubbs family for their recoveries. (Soon thereafter he made good on the checks.) In addition, he never paid their medical bills, yet later told them that he had.[1]

Petitioner also failed to turn over money received from the Chubbses' insurance carrier. Soon after the case settled, petitioner filed claims with the Chubbses' insurance company pursuant to a medical payment provision of their policy. He received checks made out to him and the Chubbses for $4,059.98, signed their names without their authorization, and deposited the money in a client trust account. He never informed the Chubbses, however, that he had applied for the money and never gave any of it to them. Mr. Chubbs later learned about the insurance payments and telephoned petitioner, accusing him of misappropriating the money; petitioner responded "Prove it!" and hung up.

### The Williams Matter

After petitioner had represented Kandice Williams for over a year in a real property matter, she grew dissatisfied with his services and retained a new lawyer. The new lawyer sent petitioner a "Substitution of Attorney" form and requested him to sign it and return it with the Williams file. Petitioner did not reply to the letter, nor to a second or third written request. The attorney finally sought relief from the superior court, which ordered the petitioner to turn over the file. Even then, he did not cooperate with Williams's new attorney.[2] In fact, petitioner sued his former client,

---

[1] Petitioner told the hearing panel that he had given the $4,060.82 to MacDonald Jackson, his former partner, for payment to the doctors. He never informed the Chubbses, however, that he had given the money to Jackson. Also, petitioner testified that he was aware that Mr. Jackson was suspended from the practice of law at the time that he allegedly forwarded him the money. Most important, petitioner could not produce a cancelled check made out to Mr. Jackson, or any evidence that a check in that amount was ever deposited in a client trust account. In any case, as the Chubbses' attorney, petitioner was the party ultimately responsible for any deficiencies in the client trust account, whether the deficiencies stemmed from his willful misappropriation or his negligent entrustment of the money. (*Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 475 [169 Cal.Rptr. 581, 619 P.2d 1005].)

[2] On one occasion, the new attorney sent a duplicating service to petitioner's office to copy the file. Petitioner's staff took the duplicators through a series of offices, ultimately leading them into a stairwell through a door which locked behind them.

claiming some interest in the real property. The court ultimately dismissed the action due to petitioner's failure to prosecute.

### The Gibson Matter

While representing Ronald Gibson in a personal injury suit stemming from an automobile accident, petitioner both misappropriated funds *and* refused to consent to a substitution of attorney. As he had done while representing the Chubbses, petitioner filed claims with Gibson's insurance company pursuant to a medical payment provision of his policy without informing Gibson. Petitioner received checks made out to him and Gibson for $2,155, signed Gibson's name without his authorization, and deposited them in a client trust account, but never forwarded the money to Gibson's doctors. Moreover, when one of the doctors demanded payment, petitioner wrote him a bad check. Gibson was eventually forced to pay the doctors out of his settlement proceeds.

Gibson, like Williams, grew dissatisfied with petitioner's representation of him and retained a new attorney. Petitioner, however, refused to sign the "Substitution of Attorney" form or turn over Gibson's file to his new attorney until a court ordered him to do so.

### State Bar Court Proceedings

The State Bar instituted formal proceedings against petitioner on September 17, 1982, by issuing a notice to show cause for his actions in the Chubbs, Williams and Gibson matters. Hearings took place between October 1984 and October 1985; petitioner was represented by counsel throughout the proceedings and a psychiatrist testified on his behalf. The referee of the hearing panel concluded that petitioner had willfully misappropriated funds in the Chubbs and Gibson matters in violation of Rules of Professional Conduct, rule 8-101, and that he had willfully failed and refused to turn over client files in the Williams matter in violation of rules 2-111 and 6-101. He also noted that petitioner was a paranoid schizophrenic who required medication to stabilize his personality. He recommended that petitioner be suspended from the practice of law for five years, but recommended that the suspension be stayed and that petitioner be placed on probation, on condition of 90 days of actual suspension, restitution to the Chubbses and several doctors, and regular psychiatric counseling. The review department adopted the referee's findings, but increased the recommended suspension to two years and conditioned petitioner's renewed practice of law on certification by an independent psychiatrist that he is capable of working in an unsupervised environment, as well as on restitution to the Chubbses and the doctors. The department also recommended that petitioner be required to take

the medication that his psychiatrist had prescribed to control his schizophrenia.

Petitioner sought review in this court. In March 1987, we returned the matter to the State Bar, however, due to its failure to provide us with a transcript of the hearings. Since neither the State Bar nor petitioner could locate a copy of the transcript, the State Bar set the matter for a hearing de novo in July 1987.

On similar findings of fact, the referee of the second hearing panel concluded that petitioner had willfully misappropriated funds in violation of Rules of Professional Conduct, rule 8-101 and Business and Professions Code, sections 6068 and 6103, and that he had committed acts involving moral turpitude and dishonesty under Business and Professions Code, section 6106. Mitigating these violations were the facts that petitioner's wrongful acts took place at the same time that his partnership with MacDonald Jackson was breaking up, and that no complaints had been filed with the State Bar since that time. The referee also took note of the time that had elapsed since the original hearings, but concluded that petitioner "did not establish any prejudice to him as a result of the delay." In aggravation, the referee emphasized that petitioner had made no effort at reimbursing his former clients or their doctors in the six years since he had misappropriated their money. He recommended disbarment.

Petitioner sought review of the decision of the hearing panel, asserting that he was denied due process because his attorney, Mr. Eagans, was unable to return from Jamaica for the hearing. Despite the fact that the hearing was noticed for July 20, 1987, Mr. Eagans left for Jamaica on July 14, intending to return by July 17. On July 17, however, Mr. Mason, a partner of Mr. Eagans, tried to obtain a continuance of the hearing after learning that Mr. Eagans would not be able to return on time. The request was denied. Mr. Mason renewed the request on the day of the hearing. The referee again refused to continue the hearing, stating that Mr. Mason had at least as much time to prepare for the hearing as Mr. Eagans had planned to spend in preparation.

In denying petitioner's request for a new hearing, the review department emphasized that petitioner never specified what evidence Mr. Eagans would have offered to the hearing panel that Mr. Mason was unable to present. "It seems improbable that Mr. Eagans would line up over the weekend witnesses whose testimony had not already been arranged and available for Mr. Mason to call. Nor has there been any showing to the contrary."

The review department unanimously accepted the referee's recommendation of disbarment. It justified the harsher recommendation on the grounds

that petitioner had made no attempt to reimburse his clients or their doctors in either the year and a half since his last appearance before the State Bar or the seven years since the actual misappropriation.

## DISCUSSION

■ Petitioner attacks the referee's denial of Mr. Mason's request for a continuance as a violation of his due process rights. To that end, he offers nine pages (over half of his petition) of a verbatim account of the portion of the hearing in which the referee denied the request, and claims that his psychiatrist could not testify at the hearing because Mr. Eagans was out of the country. However, as the review department emphasized, petitioner has not explained why Mr. Eagans's absence prevented the psychiatrist from coming to the hearing. Petitioner and Mr. Eagans received three months' notice of the date of the hearing; they certainly would have contacted petitioner's psychiatrist by the Friday before the Monday hearing if they considered his testimony important. Moreover, petitioner himself or Mr. Mason could have contacted the psychiatrist over the weekend preceding the hearing.

Without any explanation of why the psychiatrist could not testify in the absence of Mr. Eagans, we can not conclude that the referee's denial of a continuance violated petitioner's due process rights. Petitioner was represented by counsel throughout the hearing and was able to present his version of the events to the hearing panel referee. (*Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 567-568 [238 Cal.Rptr. 54, 737 P.2d 1338] [referee's denial of continuance does not constitute an abuse of discretion or denial of due process when an associate of petitioner's original counsel is available to represent petitioner at the hearing].)

■ Petitioner's only other contention is irrelevant. He claims that a letter from the State Bar's attorney to the referee in the original hearing calling his attention to the case of an attorney disbarred for wrongful acts similar to those of petitioner "was an unfair attempt to persuade [the referee] to recommend disbarment." We find no inequity in the action of the State Bar's attorney. In addition, the referee who received the letter did not recommend disbarment. Moreover, the recommendation of disbarment that we are considering here stems from the decision of a different referee.

## DISPOSITION

We find no merit in petitioner's contentions. ■ We must nevertheless examine the record independently when determining the appropriate level of discipline for an attorney who has violated the ethical standards of the

legal profession. (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1365 [240 Cal.Rptr. 848, 743 P.2d 908].) In so doing, however, we give great weight to both the disciplinary recommendations of the review department (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the factual findings of the hearing panel (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]). Moreover, petitioner bears the burden of showing that the review department's recommendation is erroneous or unlawful (Bus. & Prof. Code, § 6083, subd. (c); *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139]), or that the panel's findings are not supported by the record (*Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066]).

Petitioner has not overcome that burden. He contests neither the findings of fact nor the recommended level of discipline. "When we are presented with a record adequate to support the recommendation, we do not hesitate to impose the recommended discipline." (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1088 [245 Cal.Rptr. 404, 751 P.2d 463].) ■■ ■■■ Petitioner clearly violated the standards of conduct for a member of the bar in his handling of the Chubbs, Williams and Gibson matters. Standard 2.2 (a), of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, hereafter Standards) provides that an attorney shall be disbarred for willful misappropriation of a client's funds, absent mitigating circumstances, unless the amount taken is "insignificantly small."[3] ■■ Petitioner misappropriated over $10,000, an amount we find to be significant, and has made no effort at reimbursing the victims of his misappropriation. (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658 [238 Cal.Rptr. 394, 738 P.2d 740] [attorney disbarred for misappropriating several thousand dollars from five clients over two years]; *Tarver* v. *State Bar* (1984) 37 Cal.3d 122 [207 Cal.Rptr. 302, 688 P.2d 911] [attorney disbarred for misappropriating funds and using client's signature without authorization].)

---

[3] By their own terms, the Standards apply to all disciplinary matters in which a hearing panel decision is filed on or after January 1, 1986. (*Standards, supra,* at p. 1; *Segal* v. *State Bar, supra,* 44 Cal.3d 1077, 1087.) We have held, however, that we may constitutionally consider the Standards in assessing the appropriate level of discipline for conduct that predates January 1, 1986. (*In re Ford* (1988) 44 Cal.3d 810, 816, fn. 6 [244 Cal.Rptr. 476, 749 P.2d 1331]; *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550-551 [237 Cal.Rptr. 168, 736 P.2d 754].) After all, the Standards are only guidelines and not binding on this court. (*Greenbaum, supra,* 43 Cal.3d at p. 550.) Although we are aware that petitioner's original hearing took place before 1986, the basis of our ruling today is a hearing panel decision filed after 1986. We therefore may apply the Standards to petitioner's case.

Moreover, our decision to disbar petitioner does not rest solely on the Standards. Even before the State Bar promulgated the Standards, the misappropriation of funds was grounds for disbarment absent significant mitigating circumstances. (See, e.g., *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137].)

Therefore, it is ordered that Terry L. Kennedy be disbarred from the practice of law in California, that his name be stricken from the roll of attorneys, that he comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply with rule 955 may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon finality of this decision in this court.

MOSK, J.—I agree with the majority's findings of fact and conclusions of law, but I must dissent from the recommended discipline. While it is true that wilful misappropriation of a client's funds is a serious breach of professional ethics and merits severe discipline, I conclude that the compelling mitigating circumstances in this case justify a less severe sanction than disbarment.

The imposition of attorney discipline does not issue from a fixed formula but from a balanced consideration of all relevant factors, including mitigating circumstances. (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798 [239 Cal.Rptr. 111, 739 P.2d 1279].) In this case, however, the majority focus only on the extent of petitioner's misappropriation and do not adequately consider the mitigating circumstances that, in my opinion, militate against disbarment.

Petitioner has practiced law in this state for more than 13 years and has no prior record of discipline. We may properly consider this fact in mitigation. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].) Moreover, petitioner's transgressions were confined to the relatively short period of time between 1980 and 1981, and these incidents appear to be aberrant behavior traceable to the personal and professional difficulties petitioner experienced during that period. (See *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82].) In the intervening period since these complaints arose, petitioner has continued his practice without suffering additional charges of unethical conduct, thus demonstrating an ability to adhere to acceptable standards of professional behavior. This, too, is a mitigating factor. (*Cain* v. *State Bar* (1978) 21 Cal.3d 523, 526 [146 Cal.Rptr. 737, 579 P.2d 1053].) Both the hearing panel and the review department recognized these factors in mitigation, but the majority inexplicably fail to consider them.

In addition, these disciplinary proceedings have been hanging over petitioner's head for six and one-half years. He has faced three different hearing panels and has twice appeared before this court. Such a delay in adjudicating the complaints may be considered in determining the appropriate disci-

pline provided petitioner demonstrates that he has been prejudiced by the delay. (*Vaughn* v. *State Bar* (1973) 9 Cal.3d 698, 703 [108 Cal.Rptr. 806, 511 P.2d 1158].) As will appear, petitioner has made that showing.

As the majority concede (*ante,* p. 614), the hearing panel and review department that previously considered the identical conduct now before us recommended much less severe discipline than the majority impose today. Unfortunately for petitioner, the transcripts of his original proceeding were lost and he had to undergo a de novo hearing. As a result of the de novo hearing, three events combined to seriously prejudice him.

First, petitioner contends that because his counsel of choice was unavoidably unavailable for his de novo hearing, he was not able to present evidence from his psychiatrist to establish that he suffered from various psychiatric and medical problems. In his previous hearing before the panel, petitioner presented such testimony and the referee found in mitigation the fact that petitioner was at that time a paranoid schizophrenic. No such evidence was available in the de novo hearing, and petitioner was thus prejudiced by his inability to offer relevant mitigating evidence.

Second, the financial and emotional strain of these prolonged proceedings made it difficult for petitioner to maintain a full-time legal practice. As a result, petitioner testified, he has been unable to make restitution to the Chubbses or the medical providers, a failure which both the State Bar and the majority consider in aggravation of his conduct.

Finally, and in my mind most important, the attitude of the State Bar toward disciplinary proceedings has changed in the period between petitioner's two hearings. When the hearing panel first considered his case, the recommended discipline of five years' probation with ninety days' actual suspension was similar to the discipline we imposed in *Chefsky* v. *State Bar, supra,* 36 Cal.3d 116 (misappropriation, abandoning clients in five separate matters, false testimony before the State Bar —three years' probation, thirty days' actual suspension). However at petitioner's de novo hearing the hearing examiner argued that the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) should control in this case. Standard 2.2, which the majority apply in recommending disbarment (*ante,* p. 617), now provides that an attorney shall be disbarred for wilful misappropriation of a client's funds, absent compelling mitigating circumstances. Yet these standards became effective only on January 1, 1986. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1087 [245 Cal.Rptr. 404, 751 P.2d 463].) It is unfair to judge petitioner's conduct under these standards, because his original hearing occurred long before the standards were adopted.

Like the majority I am concerned by the substantial sum of money that petitioner misappropriated. Yet in imposing discipline our primary task is not to punish the attorney, but to protect the public, the legal profession and the courts. (*In re Nadrich* (1988) 44 Cal.3d 271, 276 [243 Cal.Rptr. 218, 747 P.2d 1146].) I believe a period of actual suspension, combined with five years' monitored probation and a requirement for complete restitution, would better serve this end without unduly punishing petitioner. (See *Frazer v. State Bar* (1987) 43 Cal.3d 564 [238 Cal.Rptr. 54, 737 P.2d 1338] [fraudulently obtaining $24,860 does not merit disbarment in light of attorney's financial difficulties, mental health problems and the dissolution of his law practice].) Such discipline is more appropriate because it recognizes the harm to petitioner's clients while at the same time taking account of the unique mitigating circumstances present in this case.

Broussard, J., concurred.