[No. S005621. Apr. 5, 1990.]

In re RICHARD M. EWANISZYK on Disbarment.

## COUNSEL

Jerome Sapiro, Jr., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Marilyn A. Winch for Respondent.

## OPINION

**THE COURT.\***—In this proceeding we consider the recommendation of the Review Department of the State Bar Court that petitioner Richard M. Ewaniszyk be disbarred from the practice of law in California. On October 12, 1984, petitioner was convicted of two counts of felony grand theft, both of which arose out of misappropriation of client funds. Petitioner commit-

---

\* Before Lucas, C. J., Panelli, J., Eagleson, J., Kennard, J., and Lillie (Mildred L.), J.†

†Presiding Justice, Court of Appeal, Second Appellate District, Division Seven, assigned by the Chairperson of the Judicial Council.

ted the thefts within one and one-half years after he was admitted to practice. In a separate matter, petitioner abandoned a client.

Based on these acts of misconduct, the hearing panel recommended that petitioner be suspended from the practice of law for five years, that the suspension be stayed, and that he be placed on five years' probation upon various conditions, including a one-year actual suspension. The review department, however, recommends disbarment. We adopt that recommendation.

## BACKGROUND

Petitioner was admitted to the practice of law in California on November 16, 1982. In November 1984, the State Bar notified us that he had been convicted of two counts of felony grand theft (Pen. Code, § 487, subd. 1), a crime involving moral turpitude. On January 11, 1985, we placed him on interim suspension pending final disposition of the criminal action. (Bus. & Prof. Code, § 6102, subd. (a).)[1] After the Court of Appeal affirmed the judgment of conviction in the criminal matter, we issued an order to show cause why a final disciplinary order should not be made. (Cal. Rules of Court, rule 951(b).) We then referred the matter to the State Bar for a hearing, a recommendation, and a report on the discipline to be imposed.

The hearing was held before a single-referee hearing panel. At that hearing, the parties stipulated to the facts of misconduct in each of three matters.

### A. *Facts of the Misconduct*

As his first case after admission to the bar in November 1982, petitioner represented Joseph Carrillo in a criminal matter. Carrillo subsequently asked petitioner to bring a civil action against the City of Pacific Grove (hereafter City) for injuries Carrillo suffered at the time of his arrest. Petitioner and Carrillo agreed that petitioner would receive one-third of the gross recovery as his fee and would be reimbursed for costs.

In January 1984, Carrillo's civil lawsuit was settled. The City issued petitioner a check, payable jointly to petitioner and Carrillo, in the amount of $15,000. After deduction of petitioner's fees and costs, Carrillo should have received $9,300. Petitioner deposited the $15,000 check into his general account, and withdrew $500 in cash at the time of the deposit. Shortly

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

thereafter, he misappropriated the $9,300 due Carrillo. During the next four months, petitioner lied to Carrillo, telling him at one point that settlement was delayed and at another point that the check was lost. When, as a result of Carrillo's inquiries, the attorney who had represented the City in the lawsuit learned Carrillo had not been paid, he reported the matter to the Monterey Police Department.

The second instance of misconduct involved petitioner's representation of Ramona Hills in a criminal case in April 1984. Hills was convicted and ordered to pay restitution. Hills's parents gave $1,800 to petitioner to be used as partial payment of the restitution. Petitioner misappropriated the entire $1,800.

The third matter involved Robert Brown, who was charged with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)). He hired petitioner to defend him. When petitioner repeatedly failed to appear in court on Brown's behalf, bench warrants were issued for Brown's arrest. Brown fired petitioner and filed suit to recover the legal fees he had advanced. In January 1985, Brown obtained a default judgment in that action and was awarded $750 in compensatory damages, $1,500 in punitive damages, and $65.25 in costs. As of August 1987, when the State Bar evidentiary hearing was held, petitioner had paid only $200 toward the Brown judgment.

Based on the misappropriation of funds from clients Carrillo and Hills, petitioner was charged with two counts of felony grand theft. On October 12, 1984, petitioner was convicted on both counts in a court trial. The court suspended imposition of sentence and granted probation, conditioned upon petitioner's serving 180 days in county jail, entering a drug or alcohol treatment program, and making restitution to Hills. After petitioner had served 60 days in jail, the court modified the terms of probation to allow him to complete the remainder of his custody in a residential alcohol and drug rehabilitation program.

Following his conviction but before the probation and sentencing hearing, petitioner paid Carrillo.

B. *Additional Evidence Introduced at the Hearing*

Petitioner admitted at the State Bar hearing that at the time of his misconduct he was spending approximately $3,000 per month on cocaine and alcohol. He testified to a long history of alcohol abuse that began in high school and included two drunk driving convictions. Petitioner characterized his alcohol and drug addiction as primarily an alcohol problem. He said

that his use of alcohol caused depression, which he relieved by using cocaine.

Petitioner attributed his misconduct in part to work pressure and insufficient income. He testified he had moved his office and increased his monthly overhead from $400 to $5,500. He also acknowledged having grossly overextended his personal finances. He testified he worked 12-hour days during the week and also worked through the weekend. Although petitioner was carrying a sizable active caseload, he characterized much of the work he did as "pro bono" because it was not fee-generating.[2]

Petitioner also blamed his financial difficulties on charging too low a fee in a time-consuming child abuse homicide case in Sacramento. He explained that without knowing the precise circumstances of the death and the defendant's prior history in a related matter, he had agreed to defend the action for the total sum of $2,500.

Additionally, petitioner offered the following evidence in mitigation. He has admitted his alcoholism and no longer has the urge to drink. He was married after his conviction and now has a stable family life. In June 1986, he moved with his family from the Monterey Peninsula to San Bernardino County, near his mother and other members of his extended family. Since his suspension from the practice of law, he has worked as a law clerk/paralegal. Several attorneys, including his current and former employers, testified to the high quality of petitioner's legal work. The attorneys knew of petitioner's misconduct either because of the publicity in the Monterey area at the time of the criminal trial or because he had admitted it to them. Most of the attorneys testified that petitioner's misconduct was inconsistent with what they otherwise knew to be his character. If petitioner were reinstated, they would not hesitate to hire or work with him.

Petitioner submitted declarations from other attorneys (including three from prosecutors), generally attesting to the high quality of his work and to his good character. In addition, petitioner submitted letters in his support from former clients, including one from Carrillo.

Psychologist Edward Conolley testified that he had conducted a four-hour interview of petitioner, and that in his opinion petitioner could now be trusted to represent clients. Nonetheless, Conolley suggested that, if petitioner were reinstated to the practice of law, it would be preferable for

---

[2] The hearing panel found that in one-third of the cases petitioner had accepted, he did not expect to be paid. The majority of these cases were criminal defense matters in which, in most instances, the clients would have qualified for representation by the public defender.

petitioner to work for as long as 24 months in a controlled environment, under a supervising attorney and without personal access to client funds.

## C. *State Bar Court Findings and Conclusions*

The hearing panel determined that petitioner's misappropriation of client funds could be attributed to petitioner's financial problems, which were caused by accepting too much nonpaying work, and by petitioner's poor office management, alcoholism, use of illegal drugs, and ego. The hearing panel found the following aggravating factors: (1) The thefts of client funds occurred within petitioner's first full year of law practice; (2) his misconduct was related to his use of illegal drugs; and (3) he had a prior history of antisocial behavior, including Vehicle Code offenses, extensive alcohol abuse and a record of issuing checks on insufficient funds.

The hearing panel listed the following factors as mitigating petitioner's misconduct: (1) He repaid the victims (albeit after his arrest), and victim Carrillo "volunteered a warm letter of recommendation on [petitioner's] behalf"; (2) he accepted "pro bono" work; (3) he is known for his legal knowledge, ability and honesty; (4) he assumed responsibility for his acts, has completed alcohol and drug programs, and has been involved with the "The Other Bar," an alcohol treatment program for lawyers and judges; (5) marriage and parenthood have stabilized his life; (6) the publicity surrounding his conviction caused him suffering and embarrassment; (7) his abandonment of client Brown was an aberration and out of character for him; and (8) he produced "a panoply of legal peers and representative community citizens" who testified on his behalf.

The hearing panel recommended that petitioner be suspended from the practice of law for five years, and that the suspension be stayed and petitioner be placed on probation subject to such conditions as a one-year period of actual suspension, abstinence from the use of alcohol or controlled substances, participation in an alcohol or drug abuse program, and payment of the civil judgment in the Brown matter. The hearing panel further recommended that, during the first two years immediately following his actual suspension, petitioner be restricted to working as an employee of another attorney and that he not be allowed to have a bank or trust account from which he alone could make withdrawals.

Although the review department accepted the hearing panel's findings, it recommended disbarment and suggested that petitioner prove rehabilitation in a proceeding for reinstatement.

DISCUSSION

■ In reviewing matters of attorney discipline, we undertake an independent examination of the record. (*Hitchcock* v. *State Bar* (1989) 48 Cal.3d 690, 695 [257 Cal.Rptr. 696, 771 P.2d 394]; *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699].) Although we accord substantial weight both to the review department's recommendation as to discipline and to the findings of the hearing panel, we are not bound by them. (*Chang* v. *State Bar* (1989) 49 Cal.3d 114, 127 [260 Cal.Rptr. 280, 775 P.2d 1049]; *Kennedy* v. *State Bar* (1989) 48 Cal.3d 610, 617 [257 Cal.Rptr. 324, 770 P.2d 736].) Petitioner has the burden of demonstrating that the review department's recommended discipline of disbarment is either erroneous or unlawful. (*Kennedy, supra,* 48 Cal.3d at p. 617.)

We also find guidance in the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V).[3] The standards provide for summary disbarment upon a felony conviction for theft of client funds. (Std. 3.3.) Moreover, they provide for disbarment for willful misappropriation even absent criminal prosecution: "Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed." (Std. 2.2(a); see *In re Demergian* (1989) 48 Cal.3d 284, 293 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 662 [238 Cal.Rptr. 394, 738 P.2d 740]; *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 132 [192 Cal.Rptr. 866, 665 P.2d 956].)

As amended in 1985, section 6102 provides for summary disbarment of an attorney upon conviction of a felony if "[a]n element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement" and "[t]he offense was committed in the course of the practice of law or in any manner such that a client of the attorney was a victim." (§ 6102, subd. (c).) Petitioner contends, however, that to summarily disbar him pursuant to this provision would violate the constitutional prohibition against ex post facto laws because his misappropriations and felony convictions predate the 1985 enactment of the statutory amendment. He also argues that the amendment must be applied prospectively in the absence of clear legislative intent to the contrary. The State Bar rejects petitioner's ex post facto argument and urges that, consistent with the purpose of protect-

---

[3] All further references to standards are to these provisions.

ing the public against lawyers who steal client funds, the Legislature must have intended retroactive application of the amendment.[4]

■ Based on our full consideration of the evidence presented, we conclude that the serious nature of petitioner's misconduct warrants disbarment regardless of the summary disbarment provided by section 6102, subdivision (c). Thus, because we reach the same result even when we consider petitioner's mitigating evidence, we need not decide whether the Legislature intended section 6102, subdivision (c) to apply retroactively. (See *In re Ford* (1988) 44 Cal.3d 810, 816 [244 Cal.Rptr. 476, 749 P.2d 1331].)

Petitioner was in practice for little more than a year when he misappropriated over $11,000 in funds from clients Carrillo and Hills; this conduct resulted in his conviction of two felony counts of grand theft. As reflected here by the district attorney's prosecution of the matters as felonies, by the trial judge's imposition of jail time, and by the review department's recommendation that petitioner be disbarred, misappropriation of client funds is serious misconduct. We have so stated on many occasions. (See, e.g., *Jackson* v. *State Bar* (1975) 15 Cal.3d 372, 382 [124 Cal.Rptr. 185, 540 P.2d 25].)

In arguing against disbarment,[5] petitioner contends that the evidence he presented in mitigation not only is compelling but predominates. We disagree. Much of the evidence petitioner presented helped to explain his misconduct but was not mitigating in the sense of reducing his culpability. (See *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 821 [263 Cal.Rptr. 798, 781 P.2d 1344].)

Petitioner has attempted to bring his case within several of the circumstances defined in the standards as mitigating. (See std. 1.2(e).) Yet, viewed in the most favorable light, petitioner's evidence supports only one potential

---

[4] It does not appear that the review department's disbarment recommendation was based on the 1985 amendment of section 6102. The review department voted thirteen to two for disbarment, one member abstaining. In making that recommendation, the review department concluded that disbarment was appropriate considering the severity of the misappropriation of client funds in two matters coupled with other misconduct. Only three of those voting to disbar suggested that the Legislature's recent amendment of section 6102, subdivision (c) had influenced their vote in any way. Thus, a clear majority voted for disbarment irrespective of section 6102, subdivision (c). (See Rules Proc. of State Bar, rule 452.)

[5] In his brief, petitioner urges us to adopt the hearing panel's recommendation of a five-year suspension, stayed, a five-year probation, and a one-year actual suspension on various conditions. At the time of oral argument in this case, petitioner had been on interim suspension for five years and thus would be eligible to apply for reinstatement immediately upon finality of a disbarment order. (Rules Proc. of State Bar, rule 662.) Nonetheless, his counsel argued that instead of disbarment we consider imposition of an additional period of actual suspension.

basis for finding mitigation under the standards: "The passage of considerable time since the acts of professional misconduct occurred followed by convincing proof of subsequent rehabilitation." (Std. 1.2(e)(viii).)

At the time of the State Bar hearing, little more than three years had passed since petitioner's misappropriation of client funds. By then, petitioner had made significant changes in his life-style. He had remarried, taken on the responsibilities of parenthood and, apparently to avoid temptations that he associated with living in the Monterey area, moved his family to San Bernardino County. Various witnesses testified that petitioner is now a changed man, and they described the physical changes in his appearance since the days when he was indulging daily in drugs and alcohol. While this evidence is mitigating, it is not sufficiently compelling to warrant reduction of the discipline to something less than disbarment.

Most of the factors in mitigation listed by the hearing panel concern petitioner's rehabilitation after his prosecution for the thefts. After his conviction, and as a condition of probation in the criminal case, petitioner participated in alcohol and drug treatment programs. He also became involved with "The Other Bar," an alcoholism counseling program for members of the legal profession. At the State Bar hearing, petitioner testified as to his rehabilitation from drug and alcohol dependency, and several witnesses who had been with him at social gatherings after his involvement in alcohol treatment programs testified they did not see him take a drink on those occasions.

It is not clear, however, that petitioner has consistently participated in a drug or alcohol program since his move to San Bernardino County. He testified that he had stopped attending "The Other Bar" meetings because he no longer felt the need and because the nearest meeting was 45 miles from his home. He maintains he continued to attend Alcoholics Anonymous meetings and, in a declaration lodged before oral argument, states he attends those meetings weekly. We are reluctant to consider documentary evidence not presented to the State Bar Court (*Slavkin v. State Bar* (1989) 49 Cal.3d 894, 905 [264 Cal.Rptr. 131, 782 P.2d 270]; *In re Rivas* (1989) 49 Cal.3d 794, 801 [263 Cal.Rptr. 654, 781 P.2d 946]), but we "will not ignore such evidence where it is the only means by which an attorney can meet the heavy burden of proving rehabilitation from a serious physical or emotional problem precipitating misconduct." (*Slavkin, supra,* at p. 905.) On the facts of misconduct in this case, however, we need not decide whether petitioner's evidence demonstrates a meaningful and sustained period of rehabilitation from his addiction to alcohol and cocaine. (See *In re Billings, ante,* p. 358 [267 Cal.Rptr. 319, 787 P.2d 617].) Even assuming petitioner has made that showing, his evidence does not convince us that "the most compelling

mitigating circumstances clearly predominate" (std. 2.2(a)), and thus that a sanction less than disbarment is appropriate.

The hearing panel found additional mitigation in the fact that petitioner had repaid the victims. But petitioner repaid clients Carrillo and Hills only after criminal charges had been brought against him. At the time of the State Bar hearing in August 1987, petitioner had paid only $200 toward the civil judgment obtained by client Brown. At oral argument, counsel for petitioner stated that petitioner had no obligation to pay the judgment, which counsel characterized as having been obtained by "trickery," but conceded that petitioner had done nothing to have the judgment set aside. Under these circumstances, we do not consider petitioner's repayment to be a mitigating factor. (Std. 1.2 (e)(vii); see *Rosenthal, supra,* 43 Cal.3d at p. 664.)

While we agree that representing indigent criminal defendants for little or no pay may be a mitigating consideration, its effect is somewhat diminished by the fact that it appears petitioner's pro bono work was substantially motivated by his desire to build his fledgling legal practice.

We have considered petitioner's argument that we have not always ordered disbarment in cases where an attorney misappropriates clients' funds. Recently we did reject the review department's recommendation of disbarment in a case involving misappropriation of money from a client trust fund. (*Baker* v. *State Bar, supra,* 49 Cal.3d 804.) We did so, however, in light of mitigation more compelling than what petitioner has presented: the attorney had a genetic predisposition to alcoholism, had practiced for four years and four months without incident, voluntarily enrolled in drug and alcohol treatment, and of his own volition ceased practicing law and worked at heavy labor until he had undergone rehabilitation. On the facts of this case we conclude that disbarment is appropriate. Petitioner has not met his burden of proving that the recommendation of the review department is erroneous or unlawful. (*In re Demergian, supra,* 48 Cal.3d at p. 297.)

It is ordered that petitioner Richard M. Ewaniszyk be disbarred and that his name be stricken from the roll of attorneys in this state. This order shall be effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

**MOSK, J.**—I dissent. Evidence of petitioner's transformation since his abstention from drugs and alcohol over five years ago should mitigate the harshness of the discipline imposed on him. Accordingly, I would follow the recommendation of the hearing referee that petitioner be placed on five years' probation with one year's actual suspension.

We have given little weight to recovery from substance abuse as a mitigating factor when the rehabilitation is short-lived. (See *Twohy* v. *State* (1989) 48 Cal.3d 502, 515 [256 Cal.Rptr. 794, 769 P.2d 976] [two months' rehabilitation]; *Gary* v. *State Bar* (1988) 44 Cal.3d 820, 824-825 [244 Cal.Rptr. 482, 749 P.2d 1336] [less than two years' rehabilitation and recovery dubious]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 664 [238 Cal.Rptr. 394, 738 P.2d 740] [eighteen months' rehabilitation].) On the other hand, when the period of abstention is significant, so as to demonstrate a "meaningful and sustained period of successful rehabilitation" (*Rosenthal, supra,* 43 Cal.3d at p. 664), we have concluded that a period of supervised probation was adequate to protect the public. (See *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 819-823 [263 Cal.Rptr. 798, 781 P.2d 1344] [no disbarment when abstention from drugs and alcohol was for approximately four years]; *Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 205-209 [168 Cal.Rptr. 333, 617 P.2d 486] [same].)

In *Baker,* which the present case resembles in a number of respects, the attorney had misappropriated client funds on 10 occasions. His misconduct was directly attributable to his alcohol and cocaine abuse. He had practiced law for a fairly brief period—four years—prior to his misconduct. From early 1985 until the time the case was heard in mid-1989, Baker abstained from alcohol, according to various sources. We found that Baker's continuing sobriety, together with his practice of law without incident for the previous three years, justified a less stringent penalty than the disbarment recommended by the review department. We instead ordered that Baker be placed on three years' probation with actual suspension of one year or until full restitution was made. (49 Cal.3d at pp. 823-824.)

I believe similar mitigating circumstances exist in the present case. Here, the referee found that petitioner's misconduct was attributable in part to his habits of substance abuse. He has apparently not used drugs or alcohol since 1985. Numerous witnesses attested both to his continuing sobriety and to the marked beneficial changes that have resulted.[1] He has volunteered to work for various substance-abuse recovery programs, including "The Other Bar." He has remarried, and the referee found that marriage and parenthood have stabilized his life. He was working at the time of the discipline hearing as a law clerk for an attorney in San Bernardino County, who testified to petitioner's competence, reliability, and sobriety. The district attorney who prosecuted him in Monterey submitted a letter of recommendation.

---

[1] Although the majority imply otherwise, the undisputed testimony of Thomas Thornburg, petitioner's employer, in State Bar Court was that petitioner continued to be active in Alcoholics Anonymous after moving to San Bernardino County.

Because there is apparent authenticity and durability to petitioner's control of his illness, I believe that the mitigating factors taken in their totality are compelling and therefore concur in the hearing referee's recommendations. These recommendations include, as conditions of probation, that petitioner be actually suspended for one year, that he not practice as a sole practitioner for two years, and that he make full restitution to the one client still owed money. The concern that petitioner may discontinue participation in a substance-abuse recovery program is adequately addressed by the hearing referee's recommendation that he continue in such a program, as we required in *Baker.* (*Baker* v. *State Bar, supra,* 49 Cal.3d at p. 824.) Given petitioner's notable recovery, I believe the rigorous conditions of probation recommended by the referee will be ample to protect the public.[2]

Broussard, J., concurred.

Petitioner's application for a rehearing was denied June 7, 1990.

---

[2] I also conclude that Business and Professions Code section 6102, subdivision (c) does not apply retroactively to petitioner. An examination of the legislative history of that statute indicates no intent to make it retroactive. Nor does the lack of retroactive application of the legislation leave the public unprotected. The statutory scheme in existence prior to passage of section 6102, subdivision (c) permitted disbarment for misappropriation of client funds. This court has held that when legislation is amended to substitute mandatory for permitted sanctions, retroactivity will not be found absent express legislative intent. (See *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 177-178 [18 Cal.Rptr. 369, 367 P.2d 865] [mandatory denial of teaching credentials to those convicted of specified sexual offenses not retroactive].) We are therefore not compelled to disbar petitioner.